WALLACE *v.* WILMINGTON & N. R. Co.

*Evidence—Carriers of Passengers—Station Accommodations— Damages.*

A student of law having assisted his preceptor in the preparation of a case for trial is too closely allied to him to be permitted to testify as a witness at the trial.

Railroad companies are bound to provide safe and convenient means of approach to their stations for all who take their trains as passengers, and of departure for those leaving them ; and, as a part of this obligation, the stations must be sufficiently lighted, and kept lighted until all passengers have had a reasonable time afforded them to reach a safe public thoroughfare by the aid of such lighting, if needed, or unless a guide be furnished for the purpose by the company.[*]

A great many trains passing a particular station every day make the approach to and departure from that station very dangerous, and the diligence and care of the railroad company in protecting its passengers in coming and going must be proportionate to the risk incurred by them, and such danger also requires of the passenger cautious circumspection, proportioned to such risk.

---

[*]Railroad companies are bound to keep in a safe condition all portions of their stations and grounds, and approaches thereto, which the public naturally use in passing to and from the cars, *Green v. Railroad Co.*, 36 Fed. Rep., 66; *Railroad Co. v. Lucas (Ind.,)* 21 N. E. Rep., 968; *Timpson v. Railway Co.*, 5 N. Y. Supp., 684; and to properly light the platform a reasonable time before the arrival and departure of trains, *Grimes v. Railroad Co.*, 36 Fed. Rep. 72; see, also, note Id. ; *Groll v. Railroad Co.*, 4 N. Y. Supp., 80; *Lafflin v. Railroad Co.*, (N. Y.) 12 N. E. Rep. 599, and note ; *Cross v. Railway Co.*, (Mich.) 37 N. W. Rep., 361; *Reed v. Railroad Co.,* (Va.) 4 S. E. Rep., 587.

The law requires of the carrier that he shall adopt the usual kind and quality of means employed by other railroad carriers, to enable them, similarly situated, the better to perform their duties.

Notwithstanding the negligence of the carrier, if the accident could have been avoided by due care on the part of the victim, he cannot recover at law for the injury received. That care is such as a man of ordinary prudence would take under similar circumstances to avoid accident, and is proportioned to the risk incurred.

If a passenger, being a stranger to the station and surroundings, and finding himself, almost immediately after alighting from a train, left in utter darkness by the extinguishment of the station light by the agent of the railroad, the railroad cannot claim that the passenger is a wrong-doer if he, in his effort to get to a place of safety or for information, cross other ground of the defendant than that upon which the station is actually erected.

If the plaintiff committed herself to the guidance of a third person, and trusted to his knowledge and skill, she would be held to have waived the duty of the railroad to furnish her with safe means of departure. But if this third person, being a member of the party, be equally ignorant of the proper way to depart, she could hardly be charged with having put herself under such guidance.

Plaintiff, receiving the verdict of a jury, is entitled to receive one compensation for all damages past and prospective, including expenses incurred, loss of time, and for actual suffering of body and mind as the consequences thereof.

*(New Castle, December 13, 1889.)*

ACTION on the case for damages sustained by plaintiff due to the negligence of defendant.

*A. E. Sanborn,* being called by the plaintiff, was examined as follows:

*Mr. Bradford:*—I desire to ask Mr. Sanborn some questions on *voir dire* and waive the oath.

*Mr. Bird:*—I would rather have it put. Mr. Sanborn stated that he had conscientious scruples to swearing, and he was then affirmed.

*By Mr. Bradford.*

Q.  Have you been assisting Mr. Bird in preparing this case for trial?

A.  I have.

Q.  Have you been examining the authorities for him?

A.  I have.

Q.  Collecting cases for him?

A.  I have.

Q.  Have you been examining witnesses for him. I mean outside of court?

A.  I have in collecting testimony for him.

Q.  Have you not been actively assisting and aiding Mr. Bird in the preparation of this case all the way through?

A.  I have.

Q.  Have you not been taking notes for Mr. Bird at this table?

A.  I have.

Q.  You have your office with Mr. Bird?

A.  Yes sir.

*Mr. Bradford:*—I do not propose to argue it, but I propose to object to the competency of the witness on the ground of public policy; that he has, of his own showing, identified himself with the counsel in this case.

(Objection sustained.)

Mr. Bird asked that the Court state the ground of the ruling.

Comegys, C. J.: The majority of the Court decide that the offer is inadmissable.

The reason of my brethren is this, that it is contrary to public policy according to the views they take of the matter, understanding, that he is not counsel in the case.

HOUSTON J. It is well settled and has been ruled in this Court that counsel in the case cannot be a witness or is incompetent, not by any law, but by reason of the public policy which has been recognized and established. I am very sorry that this question has arisen, but as it has arisen, I must decide it according to the dictates of my own conscience. Mr. Sanborn, in whom I have as much confidence as any gentlemen at the Bar, has been so immediately identified with the counsel in the trial of this case, and the preparation of it, that I consider that the principle of public policy applies to him and forbids his examination as a witness as much as if the counsel himself proposed to prove the facts.

Also on the further ground that it would be very easy in this method to avoid the difficulty of counsel testifying. The danger of that is it opens the door to it, and in a case like this, which all new methods will be adopted as they can be on both sides for the purpose of getting in evidence, I feel the obligation more imperative upon me to adhere strictly to the principle as ruled, and that is that public policy forbids the examination of such witnesses, counsel or any one who has been so particularly identified with the counsel in the trial of the case as Mr. Sanborn has admitted to have been by his own statement in this case.

That is the ground upon which I put it, and I think it rests upon the same foundation that excludes counsel from being a witness. Not that I mean to intimate that any such thing has been done in this case, but it opens the door to it. I see that very readily if it is allowed.

PAYNTER, J. It is the same as a privileged communication, that counsel have not only not got the right to give away themselves, but even if they want to give away, the Court has got no right to hear them. The rule is for the protection for attorneys in their practice, and applies to whatever come in their knowledge as attorneys. I am speaking now of where they are counsel. In this

case, it has been said that Mr. Sanborn is not actually counsel, but facts have been mentioned here, and we know that he has been here taking notes, and he says he has been looking up cases and looking for evidence; and also the fact that he is in Mr. Bird's office and is closely allied with him, and although he may not have a special pecuniary interest in this case, yet he has an interest in Mr. Bird's practice, and though it is nothing whatever against him, or his character as an attorney, it is strictly according to that rule, that where an attorney is in any way interested in a case at all, he must be excluded as a witness, and anything that comes to his knowledge as such attorney is excluded, not only for its effect upon the case itself, but for the interest of the attorney also.

I think that Mr. Sanborn is too closely allied to Mr. Bird, to be a witness in this case.

*Ch. Justice.* The rule as I understand it is, where the relation of attorney at trial exists between parties, that the parties should not be allowed to be witnesses in a case, and that for very evident motives of public policy. I have never heard of the rule being extended any further.

I was for a long while student at law, and to very great advantage to me I assisted my preceptor in searching up authorities for his cases, days and nights and weeks, and assisted him otherwise in the preparation of his cases for trial, and it never occurred to me for a moment that I would not be a competent witness to prove any fact.

I might have become so identified as being his student and take the deep interest as I did in his welfare as to have created a bias in my mind. That is a matter for the jury.

When the relation shown, the intimacy of it, and all that, it is a question for the jury to determine whether under such circumstances they would give much credit to the testimony of one who has taken so active a part.

In this case on the other side it has been shown that Mr. Mc-

Causland, one of their principal witnesses, has assisted in the preparation of this case. He has taken, and it is not anything to his discredit, but to his credit as a faithful officer of the company, an active interest and pains to assist the counsel in preparing this case for trial.

It does not occur to me that Mr. McCausland stands in any other relation to this case looking at it in a common sense point of view than Mr. Sanborn, because Mr. Sanborn, was not counsel, not consulted as counsel has no interest in the cause and nothing he had depended on the cause at all, but he has assisted his preceptor, as he ought to have done, to prepare it for trial. I can see no distinction in reason between his case and that of Mr. McCausland or any other witness on the defendant's side.

The rule is not an absolute rule; that is, it is not one to be followed always, for Courts will allow an attorney to give testimony in a case, but they will compel him beforehand to withdraw from the case so that he no longer has the inclination to represent things in a different light from what they were before. It is not done commonly, but it has been done under circumstances.

Here the object is to contradict a witness; that is a very material and very important matter. indeed, and that cannot be done apparently by anybody else, if it can be done by him, and it strikes me it would be a very hard case to deprive the plaintiff of the benefit of the testimony of Mr. Sanborn in this case to contradict the very important testimony of Dr. Smiley simply because he assisted his preceptor in the preparation of this case for trial.

HOUSTON J. I did not suppose there would be any necessity for it or I would have averted to it. This only applies to gentlemen who stand in the relation of legal counsel, professional counsel. It cannot apply to any witness in a case unless he is a lawyer by profession and is so intimately associated with the member of the bar who has charge of the trial of the case as to identify him with it. It is on the ground of public policy. Mr. McCausland's case is very different; he is not a lawyer, he does not come as a relative or connected with the counsel.

I would further say with regard to the student at law, I do not know that it would have applied, still I would feel inclined to look very favorably upon the objection to the admission of a student at law who at the time was reading law in the office of the counsel employed in the case.

There is identity of Mr. Sanborn in this case with the trial of the case, such an identity as the agent of the counsel, in the trial and he has assisted during the trial in Court. What a man does by an agent he does by himself according to the principles of law. If the principal would be objectionable, the agent would also.

The danger of opening the door where counsel are not as high toned and honorable as I admit counsel in this State generally to be, and ought to be, it opens the door in which evidence might easily be produced, if we should hold this strictly admissable. That constrains me to look unfavorably upon the application. Besides whenever I have grave doubt, as I have in this instance, I feel that we ought not to depart from a rule which I think applies to it.

*John Biggs* and *Levi C. Bird* for plaintiff:

The plaintiff was a passenger of the defendant company, towards whom it was bound to exercise the *utmost care.* Not only that it would safely carry her ; but also provide for her a safe landing place, and leave her surrounded by conditions that were reasonably safe.

*Knight v. Portland, &c. R. R.,* 56 Me., 234 ; *Hurlbert v. New York Cent. R. R.,* 40 N. Y., 145-146 ; *McDonald v. Chicago, &c. R. R.,* 26 Iowa, 142.

Plaintiff fell from platform. Dark.

Held : Railroad must keep safe its ground, &c., approaches to which passengers would naturally resort.

*Brassell v. N. Y. Cent. R. R.,* 3 A. & E. 383, 84 N. Y., 241.

Note to same case page 384.

*John v. Bacon, L. R.,* 5 C. P., 437 ; 1 *Thompson Neg.,* 315.

A railroad company owes to its passengers the duty of providing a safe and easy mode of egress from its station to the nearest highway, or street.

*Hoffman &c. v. N. Y. C. R. R.*, 75 N. Y. 605; *reported below*, 13 Hun., 589.

Passenger taking nearest cut home R. R. had obstructed usual path and passenger used R. R. tracks.

*Hurlbert v. New York Cent. R. R.*, 40 N. Y., 145–146; *Dillage v. New York Cent. R. R.*, 56 Barb., 30; *Nicholson v. L. & Y. Ry.*, 3 H. & C., 534; *Cross v. Lake Shore &c. R. R.*, 37 N. W., 361; *Wharton on Negligence Sec.* 852; *Nicholson v. Lancashire R. R.* 3 H. & C., 534.

If a railroad company locates its station in a *dangerous place*, it must exercise care and vigilence proportioned to the danger, to protect its passengers from accident.

*Hurlbert v. New York Cent. R. R.*, 40 N. Y., 150; *Bead v. Conn. &c. R. R.*, 48 Vt., 106.

A passenger when taking or leaving a railroad car at station, has the right to assume that the company will not expose him to unnecessary danger.

*Brassell v. N. Y. Cent. R. R.*, 3 A. & E., 383.

The conditions under which passengers are landed by a railroad company should be such that they with reasonable care may depart therefrom in safety, and to comply with this plain duty they should provide sufficient lights at their stations to show the surroundings at night, and proper attendants to direct passengers to a safe course. *A fortiori* where the locality is a dangerous one, and surrounded with perils to a stranger.

*Patton v Chicago &c. R. R.*, 32 Wisc., 524

The injury in this case was not caused by any defects in the R. R. premises.

*Martin v. Great Northern Ry. Co.*, 16 Com. B. 180; *Alabama &c. R. R., v. Arnold*, 35 A. & E., 466–468–469–470; *Bennett v. Louisville &c. R. R.*, 1 A. & E., 71, 72, 73; *Fonis-*

*ton v. Chicago &c. R. R.,* 44 Am. Rep., 444–445–446–447; *Moses v. Louisville &c. R. R.,* 30 A. & E., 556–557–558–560; *Osborn v. Union Ferry Co.,* 53 Barb., 623; *Bueneman v. St. Paul R. R.,* 18 A. & E., 153–154; *Fordyce &c. v. Merrell,* 5 S. W., 329; *Rennicker v. S. C. R. R.,* 18 A. & E., 149; *Stewart v. International R. R.,* 2 A: & E., 497; *Bead v. Conn. R. R.,* 48 Vt., 101–102–103; *Wood Railway Law,* page 1163, Vol. 2, Sec. 310; *Sher & Red. Neg.,* Sec. 55, Note 5; Sec. 410 & Note 2, page 147; *Patterson Ry.,* Law Sec. 252, page 254; *Wharton Neg.,* Sec. 652–654; *Thompson Neg.,* Vol. 1, page 315; *Wharton Neg.,* Sec. 652.

The question as to whether a station and its grounds are sufficiently lighted is one of fact, and the mere circumstance that they were lighted sufficiently for the company's servants and agents who were familiar with the premises, is not sufficient—they must be sufficiently lighted to enable *strangers* safely to get upon or leave the premises.

2 Wood's Railway Law, 1164–1165; *Martin v. Gt. Northern Ry. Co. C. B.,* 180; *Berkett v. Whitehaven Junc. R. R.,* 4 H. & N., 730; *Peniston v. Chicago &c. R. R.,* 44 Am. Rep., 447.

### PROXIMATE CAUSE.

The negligence of the defendant company being proved the question arises.

Was the *negligence* of the defendant the *proximate cause* of the injury?

Whether or not it was so, is a question for the jury.

" If the intervening causes are merely incidental having been set in motion by the first cause, and are not *new* and independent forces sufficient of themselves to cause the disaster the law passes these and traces the injury to the *wrongful act* which put them in operation.

The principle is that if the injury is produced by the wrong-

ful act during the continuance of its causation, it will be regarded as the proximate cause ; but as too remote, though furnishing the occasion when the injury occurs after the act is completed and terminated by the intervention of another and independent cause.

On the intervention of other agencies the inquiry should be, is the original wrongful act an *antecedent efficient* and *dominant* cause, which put the other causes in operation.

*Beech Contrib. Neg.* page 32–33, 42–43 ; *Alabama &c. R. R. v. Arnold,* 30 A. & E., 547–548–550–551–552–553 ; *Insurance Co. v. Boon,* 95 U. S., 117, 133 ; *Milwaukee &c. v. Kellog,* 94 U. S., 469.

Failure of a railroad company to keep its depot in a *properly* lighted condition, or to have a servant there to direct passengers leaving its trains at night are acts from which negligence may be inferred, and it is a question to be submitted to the jury to determine from all the facts and circumstances whether the defendant was guilty of neglect in these respects whether, if so, its negligence was the direct proximate cause of the injury.

2 *Wood's Ry.,* Law page 1169–1170 ; *Pateen v. Chicago &c. R. R.,* 32 Wisc., 524 ; *Hartwig v. Chicago &c. R. R.,* 49 Wisc., 358 ; *Mays v. Boston &c. R. R.,* 104 Mass., 137 ; *Alabama &c. R. R. v. Arnold,* 35 A. & E., 466–475–476 ; *Graynor v. Old Colony R. R.,* 100 Mass., 208.

It is the province and duty of a jury to look at the succession of events or facts and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies, and this must determined in view of the circumstances existing at the time.

1 Sher. & Red. Negligence Sec. 28–29–55 ; 2 Thompson Neg. Page 1100–1101 ; Patterson Ry. Law, Page 13 ; *Milwaukee &c. R. R. v. Kellog,* 94 U. S., 469 ; *Insurance Co. v. Tweed,* 7 Wall., 44 ; *Gilman v. Noyes,* 47 N. H., 627 ; *Ehrgott v. New York,* 264–281 ; *Lowery v. Manhatten R. R.,* 99 N. Y., 158 ; *Fairbanks v. Kerr,* 70 Pa. St., 86 ; *Insurance Co. v. Seaver,* 19 Wall., 531 ;

*Webb v. Rome &c. R. R.*, 49 N. Y., 420 ; *Lehigh Valley R. R. v. McKeen*, 90 Pa., 122 ; *Penna. R. R. v. Hope, Pa.*, 373 ; *Serth v. Hunter*, 46 Pa., 192 ; *Willey v. Belfast*, 61 Me., 569 ; *Lake v. Milliken*, 62 Me., 240 ; *Saxton v. Bacon*, 31 Vt., 540 ; *Littleton v. Richardson*, 32 N. H., 59 ; *Stark v. Lancaster*, 57 N. H., 88 ; *Clemens v. Hannibal &c.*, 53 Mo., 366 ; *Toledo &c. R. R. v. Pindar*, 53 Ill., 447 ; *Kellog v. Chicago &c. R. R.*, 26 Wisc., 223 ; *Jocker v. Chicago &c. R. R.*, 52 Wisc., 150 ; *Patten v. Chicago &c. R. R.*, 32 Wisc., 524.

When there is conflicting evidence on a question of fact, whatever may be the opinion of the judge who tries the cause as to the value of that evidence, he must leave the consideration of it for the decision of the jury.

*R. R. Co. v. Slattery*, 3 App. Cas., 1155.

## DAMAGES.

Plaintiff is entitled to receive as damages *one compensation* for all injuries past and prospective in consequence of the defendant's negligent acts. They are understood to embrace indemnity for actual nursing and medical expenses and loss of time or loss from inability to perform ordinary labor or capacity to earn money.

Also a reasonable satisfaction for loss of both bodily and mental powers, or actual suffering, both of body and mind, which are the immediate and necessary consequences of the injury.

*Jones v. Belt*, Charge of Chief Justice Comegys ; *Holyoke v. Grand Trunk R. R. Co.*, 48 N. H., 541 ; *S. C. Sedgwick, L. cases &c.*, 703, 707, 708 ; *Curtis v. City Rochester & Syracuse*, 18 N. Y., 534; 2 *Sedg.*, Measure Damage, 543 ; 2 *Wood's Ry.*, Law 1238, 1239 ; *Penna. & Ohio Canal Co. v. Graham*, 63 Pa., 290, 299 ; *Smith v. Holcomb*, 99 Mass., 552 ; *Holyoke v. Frey*, 4 Gill (Md.,) 406 ; *Mattison v. N. Y. Cent. R. R.*, 62 Barb., 364, 379 ; *Smith v. Averly*, 30., Ga., 241 ; *Canning v. Inhab. Williamstown*, 1 Cush., 451 ; *Seger v. Barkhamstead*, 22 Conn., 290 ; *Phillips v. South W. Ry. Co. L. R.*, 4 Q. B. Div., 406.

If the jury believe that the injury to plaintiff, received by falling in the sewer, was occasioned by the negligence of the defendant, without contributory negligence on the part of the plaintiff, and the said injury superinduced, accelerated, or contributed to the production or development of a cancer the defendant is responsible therefor, and the cancer is not to be treated as an independent cause of injury or suffering.

*Balto. City Pass. Ry. Co. v Kemp,* 61 Md., 74; *Rehearing,* 61 Md., 619; *Beauchamp v. Saginaw &c. Co.,* 50 Mich., 163, 172.

*Edward G. Bradford* and *Lewis C. Vandegrift* for the defendant.

1. There can be no recovery against the defendant unless the jury shall find from the evidence in the case that the defendant was guilty of negligence, and that such negligence was the proximate cause of the injury complained of.

1 *Addison on Torts,* Secs. 33 and 34; *Wharton on Negligence,* Secs. 3, 73, 97, 300 and 332; 1 *Shearman & Redf. on Neg.,* 4th Ed. Sec. 57.

2. The burden of establishing negligence on part of the defendant rests upon the plaintiff.

*Giles v. D. S. I. Co.*

3. That unless the jury shall find from the evidence in the case that the defendant held out some invitation inducement or allurement to the plaintiff to pass over that portion of the land of the defendant where the accident occurred, the plaintiff must be considered a trespasser at the time of the accident, and she cannot recover for any injury sustained thereby.

4. That if the defendant did not hold out any such invitation,

inducement or allurement it was under no obligation to fence off of guard the place where the accident occurred.

5. That if the jury shall find from the evidence in the case that the defendant furnished a reasonably safe way for passengers from the Madison Street Station, and did not hold out any invitation, inducement or allurement to the plaintiff to depart from said way, the defendant is not liable for any injury sustained by the plaintiff by reason of her departing from said way.

6. That if the jury shall find from the evidence in the case that the defendant furnished a reasonable safe way for passengers from the Madison Street Station, and that the plaintiff, without invitation, inducement or allurement by the defendant to her to depart from said way, voluntarily departed therefrom, and thereby sustained damage, the defendant is not liable therefor.

7. That if the jury shall find from the evidence in the case that the defendant furnished a proper and clearly defined way for passengers from the Madison Street Station to Madison Street, the defendant was not bound to erect barriers to guard the plaintiff or others from straying from said way and falling into an open culvert or sewer more than 141 feet distant therefrom, and is not liable for any damage sustained by the plaintiff through the omission on the part of the defendant to erect such barriers.

*Hardcastle v. S. Y. R. Co.*, 4 H. & N., 67 ; *City of Scranton v. Hill*, 102 Pa. St., 378 ; *Bedell v. Berkey*, 43 N. W. Rep., 308 ; *Howland v. Vincent*, 10 Metc., 371 ; *Hargreaves v. Deacon*, 25 Mich., 1 ; *Wheelwright v. Boston & Albany R. R. Co.*, 135 Mass., 225 ; *Bancroft v. Boston & Worcester R. R. Corp.* 97, Mass., 275 ; *Pennsylvania R. R. Co. v. Zebe*, 33 Pa. St., 318 ; *Mulherrin v. Del. L. & W. R. R. Co.*, 81 Pa. St. 366 ; *Parker v. Portland Pub. Co.*, 69 Me., 173 ; *Maemner v. Carroll*, 46 Md., 193, 212 ; *Kelley v. Fond du Lac.* 31 Wis., 179 ; *Keyes v. Marcellus*, 50 Mich., 439 ; *Daily v. Worcester*, 131 Mass., 452 ; *Puffer v. Orange*, 122 Mass.,

389; *Sparhawk v. Salem*, 1 Allen, 30; *Del. L. & W. R. Co. v. Cadow*, 120 Pa. St. 559; *Gillespie v. McGowan*, 100 Pa. St., 144; *Frost v. Grand Trunk Ry. Co.*, 10 Allen, 387; *Kelley v. Columbus*, 41 Ohio St., 263; *Gramlich v. Wurst*, 86 Pa. St. 74; *Knight v. Abert*, 6 Barr., 472; *Mistler v. O'Grady*, 132 Mass., 139; *Pitts. Ft. W. & C. R. Co. v. Bingham*, 29 Ohio St., 364; *Stone v. Jackson*, 16 C. B. (81 E. C. L.), 199; *Armstrong v. Medbury*, 34 N. W. Rep., 566; *Hounsell v. Smyth*, 7 C. B. N. S. (97 E. C. L.), 731.

8. That if the jury shall find from the evidence in the case that through the more passive acquiescence or permission of the defendant, and without any invitation, inducement or allurement on its part, its right of way, elsewhere than at crossings which the public have a right to use was used by foot passengers, it was so used at their own risk and peril, and the defendant was under no obligation to erect barriers or guards to save persons so using its right of way from meeting with injury thereon.

*Converse v. Walker*, 30 Hun., 596; *Nicholson v. Erie Railway Co.*, 41 N. Y., 525; *Morgan v. Pennsylvania Railroad Co.*, 7 Fed. Rep., 78; *Vanderbeck v. Hendry*, 34 N. J. L., 467; *Cahill v. Layton*, 57 Wis., 600; *Gillis v. Pennsylvania R. R. Co.*, 59 Pa. St., 129; *McAlpin v. Powell*, 70 N. Y., 126; *Gillispie v. McGowan*, 100 Pa. St., 144; *Zoebisch v. Tarbell*, 10 Allen 385; *Hargreaves v. Deacon*, 25 Mich., 1, 5; *Kelley v. Columbus*, 41 Ohio St., 263; *Wheelwright v. Boston & Albany R. R. Co.*, 135 Mass., 225; *Gramlich v. Wurst*, 86 Pa. St., 74; *Knight v. Abert*, 6 Barr., 472; *Severy v. Nickerson*, 120 Mass., 306; *Mistler v. O'Grady*, 132 Mass., 139; *Pitts. Ft. W. & C. R. W. Co. v. Bingham*, 29 Ohio St., 364; *Ill. Cent. R. Co. v. Godfrey*, 71 Ill., 500; *Hickey v. Boston & Lowell R. Co.*, 14 Allen, 429; *Maenner v. Carroll*, 46 Md., 193, 212; *Hounsell v. Smyth*, 7 C. B. N. S., (97 E. C. L.,) 731.

9. That foot passengers using the tracks or right of way of a railroad company, except at crossing which the public have a right

to use, are trespassers thereon or at best mere licensees, and assume
all risk and peril attending such use.

    *Cauley v. P. C. & St. L. R. Co.*, 95 Pa. St., 398; *P. & R.
R. Co., v. Hummel*, 44 Pa. St., 375; *Ill. Cent. R· Co, v. God-
frey*, 71 Ill., 500; *Mulherrin v. Del. L. & W. R.R. Co.*, 81 Pa.
St., 366; *Gregory v. Cleveland & C. C. & I. R. R. Co.* 14 N.
E., 228.

    10. Where the necessary inference from the facts disclosed in
the case shows negligence on the part of the plaintiff or the person
with whom the plaintiff is identified, contributing to the injury
·complained of, the Court should determine the negligence as a mat-
ter of law, and direct a non-suit or a verdict for the defendant as
the case may be.

    *Pittsburg and Connellsville R. R. Co., v. McClurg*, 56 Pa. St.,
294; *Baker v. Fehr*, 97 Pa. St., 70; *City of Scranton v. Hill*, 102
Pa. St. 378; *Del. L. & W. R. Co. v. Cadow*, 120 Pa. St., 559;
*Wheelwright v. Boston & Albany R. R. Co.*, 135 Mass., 225; *Mor-
rison v. Erie Railway Co.*, 56 N. Y., 302; *Reynolds v. N. Y. &c.
R. R. Co.*, 58 N. Y., 248; *Todd v. Old Colony and Fall River R.
R. Co.*, 3 Allen, 18; *Goldstein v. Chicago, Mil. & St. Paul R. Co.*,
46 Wis., 404; *Erie v. Magill*, 101 Pa. St. 616; *Hounsell v. Smyth*,
·7 C. B. N. S. (97 E. C. L.), 731; *Gregory v. Cleveland, C. C. & I.
R. Co.*, 14 N. E., 228; *Wilkinson v. Fairrie*, 1 Hurl. &c., 633;
*Reed v. Richmond & Alleghany R R. Co.*, 33 Am. & Eng. Ry.
·Cases, 503; *Comly v. Pennsylvania R. Co.*, 12 Atl. Rep. 496;
*Waite v. N. E. Ry. Co.*, El. Bl. & El., 719.

    11. That if the plaintiff found the course she took obstructed
by tracks and inequalities of surface as testified by the defendant's
witnesses, then due care on her part would have required her to re-
turn to the station premises in order to discover a proper way from
said station, and her continuing her course over said tracks and in-
equalities of surface was such contributory negligence as will pre-
·vent recovery by her for the alleged injuries sustained.

*Wilson v. Charlestown,* 8 Allen, 137 ; *Wilkinson v. Fairrie,* 1 Hurl. &c., 633 ; *Reed v. Richmond & Alleghany R. Co.,* 33 Am. & Eng. Ry. Cases, 503 ; *Comly v. Pennsylvania R. Co.,* 12 Atl. Rep., 496.

12. That it is proper that the jury in considering whether the plaintiff was or was not guilty of contributory negligence should take into consideration the inequalities of grade, tracks and surface in the course taken by the plaintiff from the platform, as constituting notice to the plaintiff that the course pursued by her was dangerous and not any way or path furnished by the defendant for passengers from its premises.

*Horton v. Inhabitants of Ipswich,* 12 Cush., 488, 491 ; *Comly v. Pennsylvania R. Co.,* 12 Atl. Rep., 496.

13. That if the jury shall find from the evidence in the case that the plaintiff left a safe path furnished by the defendant for passengers from the Madison Street Station, to pass hastily in the night time, and without a light, from said station premises across the several railroad tracks, testified to in this cause, to her destination, the condition of the intervening space being then unknown to the plaintiff, she was guilty of negligence and cannot recover for any injury sustained by her through stumbling or otherwise falling into the sewer or culvert in question.

*Del. L. & W. R. Co. v. Codow,* 120 Pa. St., 559 ; *Bedell v. Berkey,* 43 N. W. Rep., 308.

14. That if the plaintiff placed herself in charge of John Cook to be escorted from the station, any negligence on his part contributing to her alleged injury is imputable to the plaintiff and she cannot recover.

15. That any contributory negligence on the part of John Cook, while the plaintiff was under his guidance, will prevent a recovery by the plaintiff.

16. That if the jury shall find from the evidence in the case that the plaintiff entrusted herself to the guidance of John Cook and that John Cook was familiar with the premises and location of the culvert, and voluntarily and in the darkness abandoned the way provided by the defendant in order to make a short cut to the place of destination, and thereby the plaintiff under his guidance fell into the culvert, the plaintiff cannot recover for any injury sustained thereby.

17. That if the plaintiff entrusted herself to the guidance of John Cook and omitted the exercise of reasonable circumspection and precaution which she would otherwise have observed and by observing have escaped the alleged injury, she thereby contributed thereto and cannot recover.

18. That if John Cook knew the danger of abandoning in the darkness the way provided by defendant, and taking a course over the tracks and sewer, and voluntarily pursued that course, with the plaintiff under his guidance, and the injury complained of thereby happened, the negligence of Cook contributed to the same, and the plaintiff cannot recover.

*Morrison v. Erie Railway Co.*, 56 N. Y., 302 ; *City of Joliet v. Seward*, 86 Ill., 402 ; *Prideaux v. City of Mineral Point*, 43 Wis., 513 ; *Otis v. Janesville*, 47 Wis. 422 ; *L. S. & M. S. R. Co. v. Miller*, 25 Mich., 274, 277 ; *O. & M. Ry. Co. v. Stratton*, 78 Ill., 88, 91 ; *Morris v. Chicago, M. & St. P. R. Co.*, 26 Fed. Rep., 22 ; *Peck v. N. Y., N. H. & H. R. Co.*, 50 Conn., 379 ; *Callahan v. Sharp*, 27 Hun., 85 ; *Kyne v. Wil. & N. R. R. Co.*, 14 Atl. 922 ; *Waite v. N. E. Ry. Co.*, El. Bl. & El., 719 ; *City of Scranton v. Hill*, 102 Pa. St., 378 ; *Wilson v. Charlestown*, 8 Allen, 137.

19. When the plaintiff had safely alighted from the train of the defendant, it ceased to be under the obligation to observe the same care as when conveying her over its road, and thereafter only

owed her reasonable care until she left its platform and station premises.

*Moreland v. Boston &c. .R R. Co.*, 141 Mass., 31; *Imhoff v. Chicago & Milw. Ry. Co.*, 20 Wis., 362; *Indiana Central Ry. Co., v. Hudelson*, 74 Am. Dec. 254, 13 Ind., 325; *Pennsylvania Co. v. Marion*, 27 Am. & Eng. Ry., Cases 132.

20. The burden is on the plaintiff to show that the course pursued by her was an approach or way under the control of the defendant.

*Quimby v. Boston & Maine R. Co.*, 69 Me., 340.

21. What occurred to others than the plaintiff at other times more or less remote is collateral and inadmissible.

*Parker v. Portland Publishing Co.*, 69 Me., 173.

22. Want of candor on the part of the plaintiff is a proper consideration for the jury.

*Murphey v. Brooks*, 109 Mass., 202.

If the injury received by the plaintiff was occasioned by the negligence of the defendant, without contributory negligence on the plaintiff's part, and the injury superinduced, contributed to, or accelerated the production or development of a cancer the defendant is responsible therefor; and the cancer is not to be treated as an independent cause of injury or suffering.

The wrong-doer cannot be allowed to apportion the measure of his responsibility to the initial cause.

*Baltimore City Pass. Ry. Co. v. Kemp*, 61 Md., 74.

Rehearing of Case, 61 Md., 619.

*Beauchamp v. Saginaw & Co.*, 50 Mich., 163, 172.

Comegys, C. J., (charging jury.) This action now on trial before this Court, and before you as a special jury, or, as it is sometimes called, "struck jury," is what is known as an "action on the

case," that is, an action in which the special circumstances of the case itself are set forth in the complaint or declaration in writing filed in the cause by the complainant or plaintiff, and upon which he claims that he is entitled to recover for such damages as were the natural result of, or were occasioned by the default of the defendant, in the omission or neglect on his part of some duty at the time the circumstances happened which the law had cast upon him. The gist of the complaint, therefore, is the defendant's negligence. These actions are based upon the public duty of a defendant, one with which the law charges him by reason of the employment in which he is engaged, if that employment be such as is called and treated as of a public nature ; for example, that of carriers by land or water, etc.

It is with one of the former that the plaintiff here has contention before you.   Of course, a carrier may contract by express stipulation for carriage of passengers or goods of any kind.   If he do so, he is under a special agreement with the other party, and his liability, so far as the contract is legal, is to be looked for in or determined by it.   If there be no such special agreement there is still one implied by law, such as the safe and prompt carriage, delivery, and so forth.   If there be a breach of such agreements, the remedy is upon the contract itself, which is one of *assumpsit*, unless under seal, then covenant ; but, as I have said, carriers are affected by what are called "legal duties" towards their customers.   These do not in any sense rest in contract, but are such as the law has wisely created in the interest of the public, as matter of strict justice as well as public policy, though, in a sense, even such may be taken to be part of the implied agreement between the carrier and his customer, where there is none expressed ; yet, as the breach of them is considered in law more in the nature of wrong than non-performance of contract, actions as for wrong are usually brought, as the appropriate means for redress of it.   And these duties of observance towards those employing the carriers, as they result or grow out of their occupation as public agents, do not require to be proved,

on the trial of suits against them, but exist in legal contemplation, and therefore are recognized by the courts without any proof. Among these duties with which carriers are charged by law is that of providing a safe means of ingress and egress to their place of business, and to the vehicles (where such business is the transportation of passengers) by which they are to be carried, and safe and convenient vehicles, as well. Applying this requirement to carriers by railroad, they are in law bound to provide for their customers, or travelers, such in other words, as are received for transportation over their road, good engines,' safe and comfortable cars, competent engineers, safe means of access to and departure from their trains, safe platforms, where any are requisite at their stations, and all other arrangements which are necessary for the safety and convenience of passengers. In this duty of providing safe means of approach and departure from trains is involved that of properly lighting their platforms at night, so that those particularly unaccustomed to travel by their road, and knowing nothing of existing passages or ways to or from their stations, shall be able without difficulty to find them, and the way to depart from them ; if such difficulty exist, that there may be some one to whom they can at once apply for information in that respect. The law, indeed, would be sadly deficient, did it not require this duty at the hands of railroad carriers. And this is a peculiarly proper requirement of them, because of the confusion and uncertainty with which the most composed are sometimes afflicted when arriving at a strange place at night, with the noise and disturbance of an arriving and departing train in their ears. This duty of lighting continues until such time as all passengers who are reasonably diligent in taking their departure from the station where they arrive have gone away. Not until then can the lights be extinguished,—and not then, if their maintenance be necessary to guide passengers to a highway, or place of general travel or safety. And these lights must be sufficient, entirely, to point out easily to a stranger the path he is to follow in leaving the station, and be his guide for that purpose, if

it be needed, so that he may see and avoid the perils which may threaten him on his route to the place of safety. They must not only be lights adequate to show the way to and from the station to people already familiar with it, but such as will show it plainly to any one of ordinary eye-sight, though a stranger; so that by the exercise of his natural faculty of vision he may see it without any difficulty. This legal requirement at the hands of the railroad carrier is all the more necessary, as well as reasonable, where, as in the case before us, the station of the railroad is situated at a spot of comparative vacancy in a city, where there are four passenger tracks, over which a large number of trains pass and repass every secular day.

A witness for the plaintiff stated that a considerable time before the accident to the plaintiff happened he had counted them on one occasion, and found the number that passed between 6 o'clock in the morning and half past 5 in the afternoon to be from 145 to 150. This fact made the approach to that station, and departure from it, very dangerous, and threw on the defendant the necessity or duty of diligence or care in protecting its customers in coming and going, proportionate to the risk incurred by them, and also upon such customers the correlative duty of cautious circumspection or care proportioned to such risk; for the law requires diligence of both, under circumstances of peril which both are aware of. The law goes further, also, and requires of the carrier that he shall adopt the usual kind and quality of means employed by other railroad carriers, to enable them, similarly situated, the better to perform their duties. For instance, no such carrier would be considered as discharging his duty of taking care of the lives and persons of his passengers, especially on roads doing a large passenger business, who should not employ air-brakes for stopping his cars suddenly at a time of impending collision or other danger, instead of those superseded by them. In like manner, the law requires the use of the most approved means for arresting sparks from the furnaces of engines in motion; this, not for the protection of passen-

gers, but to prevent, if possible, the firing of buildings, fences, etc., along the railroad tracks; the foundation for such requirement being the maxim that you must so use your own as to do the least damage to others. This law was recognized by this court in a case tried in this county in 1867. *Jefferis v. Railrodd Co.*, 3 Houst., 447. The old brakes for cars were sufficient until the air-brakes were invented. The old way of arresting sparks was well enough until the improved spark-catchers were contrived. But as soon as and when they were adopted the law I have quoted came immediately into action, and required of the railroad carrier that he should adopt the new improvement, or incur the risk of his want of dilligence. In other words, it treated the omission as negligence; thus making him liable in damages to any one injured by such neglect of duty. No case has hitherto occurred in this state of an accident occurring from alleged want of sufficient light at night to guide a passenger safely through the perils, more or less, that beset all those who have to take or leave trains of cars at their stations at such a time. We are thus called upon for the first time to declare the law upon the subject.

It may be gathered from what I have said already that the same rule applies to lighting stations, and their platforms and approaches, that obtains with respect to other common duties; that is, that the most suitable means for the accomplishment of the end of safety to the passenger shall be adopted. Not to adopt them is in fact as much negligence, in law, as any other act of omission; subjecting the carrier to damages consequential upon the neglect, to be measured by a jury according to the nature and character of the injury suffered. To adopt the improved method of lighting, whatever that may be, insures the carrier against all risk of a verdict in damages for insufficient lighting; because he has done all the law required of him, and he cannot be held liable, in any case, if he do that. But, if he do not adopt it, he is guilty of negligence, and would be liable for an accident for want of proper light, unless he could show that, although the light was not of the best, it was still

good enough to guide people safely to and from his trains, and that the injury complained of resulted from want of due care on the part of the complainant, who, if he had exercised common prudence,—that is, the same care that people ordinarily prudent take with respect to their persons under like circumstances to those existing at the time he was injured,—would have escaped all damage. You will perceive, therefore, that though the carrier would be in fault, or negligent of the legal duty resting upon him, yet he could not be made to respond in damages to a claim of one who was injured by insufficient light provided for persons going to or from trains, if the latter could have escaped the injury he received by the use of such care on his part, if that were within his power, as a reasonably careful person would take of himself under like circumstances.   So far from the omission of duty on the part of the carrier excusing the person going to or from the train by the approach or way provided by the carrier, more care would be required of him than if the way were perfectly plain.   To put it otherwise, he could not hold the carrier liable for his negligence, if his own negligence, in not taking due care under the circumstance, led to the injury.   In such case, he would himself be guilty of contributing, by his negligence, to the occurrence of the accident. If such contribution were what is called the " proximate cause" of the injury,—that is, if, notwithstanding the negligence of the carrier, the accident could have been avoided by the use of proper (that is, adequate,) care on the part of the victim of the casualty,—he cannot recover at law for any injury he received.   What would be adequate or due care, as it is most usually expressed, is such care as a man of ordinary prudence would himself take, under similar circumstances, to avoid accident.   That care is proportioned to the risk to be incurred.   And, on the other hand, the means to be taken by the carrier to avoid the risk are proportioned to it, also.   All of which shows that if the carrier desires to protect himself against responsibility in damages for injury to those taking or departing from his trains at night, at dangerous places, such as the station here

was shown by uncontradicted proof to be, he must adopt the best means in his power to provide proper and sufficient access to and egress from them. If he.fails in that respect, he is guilty of negligence in law, and liable accordingly, unless he can show that notwithstanding it the damage or injury to the party complaining would not have happened but for his contributing negligence, as its proximate cause. The accident would not have happened but for two concurring causes,—the negligence of the carrier and that of the passenger. If the latter, with his eyes open, walks into danger that he might have avoided if he had been reasonably careful in looking, he could not recover for the neglect of the carrier in not removing the cause of the danger, and providing adequate protection against it.

I hope I have succeeded in making the law of the liability of railroad carriers with respect, particularly, to those who have occasion to use their trains at night plain to the jury. But, lest I have failed to do so, I will aid a few additional words. From the nature of this employment, they are bound to provide safe and convenient means of approach to their stations for all who take their trains as passengers, and of departure for those leaving them. This obligation is not performed unless the stations and approaches are lighted well and sufficiently, and kept lighted until all passengers have had a reasonable opportunity or time afforded them to reach a public highway or other safe thoroughfare by the aid of such lighting, if needed for that purpose. From the time a passenger enters the cars of a carrier until he has, in leaving them at the end of his journey, arrived, at a public thoroughfare, if he has necessity to reach one, he is under the care of the carrier, and must have the ready means provided for him of adequate light to enable him to see his way to such thoroughfare without difficulty ; and, if difficulty exist for want of such light, he must be able to relieve himself of it by at once applying to some agent or officer of the carrier at that station for guidance. No railroad carrier can perform its duty to its passengers which does not, either by ample light or

personal guidance by one of its servants, insure him against risk in reaching a place of safety. And this duty devolves peculiarly upon those carriers who establish their stations at such places as the Madison-Street station of the defendant in this case has been shown to be, where a light is especially needed by strangers who alight, at an unknown place, from presumably well-lighted cars, upon a night described as that of the 22d of November, 1886, was, by all the testimony about it, as very dark ; the moon not shining, and with a drizzling rain falling.

With respect to the prayers for instructions offered to the court by the counsel on both sides, we do not think it necessary that they should, all of them, be treated in detail, because most of them, as we think, have been answered by the portion of the charge already read to you. But there are some which have not by it received any notice. To those I will now give the answer of the court.

The learned counsel for the defendant submitted to us a prayer, which was not incorporated in their original list, which is this : "That the court shall instruct you that upon the pleadings—that is, the paper presentation of the plaintiff's claims—she is not entitled to recover on the ground of a variance between the case made by such pleadings and the proof produced to support it." While we think that the objection should have been made when the supportative proof was offered, so that its exclusion, if justifiable, might have deprived the plaintiff of any relevant or pertinent evidence to support her claim, yet we consider the objection now, in order that this case may be treated more on the ground of the merit of the objection, if it have such, than to suppress or disallow the prayer for technical cause. So treating the prayer, we make these observations to you with respect to it : The first count in the plaintiff's declaration imputes negligence to the defendant in its failure to furnish the plaintiff with safe egress from its station. The evidence given to support it was the testimony of the plaintiff, and those of her witnesses who spoke of the fact that they were landed

at the station at night, when there was not only no moon, but that it was very dark, with a drizzling rain falling, and that before the last car of the train had passed by the place where they stood the light at the station, which they swore was the only one there, was suddenly put out, and they, being strangers there, were left in utter darkness, with no one appearing to give them information where to go. According to what will be said to you before this charge ends, this defendant was bound to keep the station lighted until passengers could, by the use of ordinary diligence, find their way themselves, or be shown it by others. The plaintiff and her witnesses stated that it was so dark they could see no means of safe egress, and that, the boy having left immediately upon extinguishment of the light, there was no one to whom they could apply for guidance. We think that, if you believe this proof, the plaintiff has maintained her allegation of negligence by the defendant made in her first count. As the two other counts substantially make the same allegation of neglect of duty, which alleged neglect is the ground of this action, we think each of them is in like respect supported by the testimony referred to. We therefore decline to charge you that the plaintiff has no case upon the proof.

With respect, also, to the prayer of the defendant upon the subject of trespass upon property, we have to state that, although it is true that a passenger going to or from a railroad station has no right to deviate from a way or route for access or departure thereto or therefrom, and commit a trespass upon the carrier's other ground, not set apart or permitted to be used for that purpose, yet, where the passenger is a total stranger to the station and its surroundings, and finds himself, almost immediately after alighting from a train, left by an agent of the carriers in utter darkness, from the extinguishment of such light as there was, it does not lie in the mouth of the carrier to claim that the passenger is a wrong-doer if, in groping his way from that station, he, in his effort to get to a place of safety, or for information, cross other ground of the defendant than that upon which the station is actually erected.

With respect, also, to the prayer, in substance, that you be instructed that the plaintiff cannot recover if the proof justified the belief that at the time of leaving the platform of the station she had committed herself to the guidance of the witness, Mrs. Hunter, and that in consequence of that the accident happened,—we answer that if you believe from the testimony that the plaintiff did so commit herself, trusting to the skill and knowledge of Mrs. Hunter to protect her from danger, she by that act would be properly held to have waived the duty of the defendant to furnish her with safe means of egress.   But we say to you, at the same time, that if it be satisfactorily shown you by the proof that this group of alleged benighted persons, of whom the plaintiff was one, were equally ignorant of the proper way to depart from that station, and were doing the best they could, the character of the night considered, to find their way out of the danger around them, she is hardly to be charged with having put herself under the guidance of Mrs. Hunter because the latter thought the light at East Liberty street was on Madison street, and of their aiming for that.   If all were totally ignorant of the place and its surroundings, they cannot fairly be said to have had a leader in one of the bewildered, who at the utmost could only have imagined that one light was another.

Finally, gentlemen, if your verdict should be for the plaintiff, we instruct you, according to her counsel's prayer for that purpose, that she is entitled to receive as damages one compensation for all damages, past and prospective, in consequence of the defendant's negligent act.   They are, understand, to embrace adequate compensation for actual nursing and medical expenses and loss of time, or loss from inability to perform ordinary labor or incapacity to earn money ; also, a reasonable amount for the loss of both bodily and mental powers, or actual suffering of body and mind, which are the immediate and necessary consequences of the injury.   We give you such instruction.   And, further, in answer to a supplemental prayer presented by him, also, we state that if you believe that the injury to the plaintiff, received by falling in a sewer, was one occasioned by the negligence of the defendant, without contributory negligence

on the part of the plaintiff, and the said injury accelerated or contributed to the development of a cancer, the defendant is responsible therefor, and the cancer is not to be treated as an independent cause of injury or suffering.

The testimony in this case was taken from the witnesses by the respective examining counsel with such care and deliberation, and has been so at large dwelt upon in the arguments before you by each of such counsel on both sides, that we do not feel it to be required of the Court to restate it to you, or make any comments upon it. All that could be said about every part of it you have heard from them, and it is all fresh in your minds. You are a special jury of very intelligent gentlemen, and need no suggestions, more than those already presented by the arguments of both sides, to enable you to understand it perfectly, and appreciate its bearing upon the case on both sides. In its material parts it is conflicting; in fact, there is never a contested case in which there is not some, and very often a great deal of, contradicted proof, giving juries much trouble to decide exactly what to do on account of want of knowledge of a very plain course, and one perfectly legal in such case, which is this: To give the most confidence to that proof which, under all the circumstances of the case, is most probable or most likely to be correct. That is all a jury can do in such case ; for certainty of correctness in a verdict, where the material for making it up is human testimony, is not attainable, but only a reasonable probability or likelihood, all things considered, that the proof made on the one side rather than on the other is the more worthy of confidence.

You will apply the law, gentlemen, which we have given you to the facts detailed by the witnesses. If your deliberate judgment should be that, all things in proof considered. the defendant is best entitled to your verdict, then it will be that such defendant is not guilty. If, on the contrary, you find the reverse, and the plaintiff is best entitled to your verdict, then you should find for her, and give her such amount of money or damages as will compensate her according to the instruction in that particular before given you.

Jury disagree.