# WILLIAM A. HOWARD, Plaintiff in Error, *v.* HENRY BABCOCK, Defendant in Error.

## ERROR TO FULTON.

If a person borrows a horse, to be used without making compensation therefor, he is bound to a greater degree of care and diligence in its care, than if it were hired. His liability in the different cases stated.

An award which declares that A. shall pay to B. the sum of money which B. paid to A., for the purchase of one of two horses, which were sold together to A. for three hundred dollars, is void for uncertainty ; and an averment in a declaration that the horse was, in fact, received at one hundred and fifty dollars, will not cure the defect.

An award must be so certain that it can be easily comprehended, and be carried into execution without the aid of extraneous circumstances.

THIS was an action of debt, commenced by Howard against Babcock, in the Fulton Circuit Court.

The declaration contained seven counts, the three first upon an award in writing, by arbitrators ; the fourth, for a mare sold and delivered ; the fifth, for chattels, mares, horses and lands bargained and sold ; the sixth, for money paid, etc. ; and the seventh, on account stated.

The award counted upon was made by virtue of a parol submission of a difference as to Babcock's liability to Howard, for the value of a mare that died in the possession of the former, and it provides and determines that Babcock pay to Howard " the sum of money for which the said Howard received the said mare from the said Babcock, on the purchase of the same from him." Each count upon the award, after setting out the same, avers that the mare was, in fact, received by Howard, on such purchase, at $150.

To these counts the defendant interposed a general demurrer, which was sustained by the court.

The plaintiff abided by the counts to which the demurrer was sustained ; and the defendant pleaded *nil debet* to those remaining.

The cause was tried at the February term, 1858, before WALKER, Judge, presiding, and a jury.

On the trial the plaintiff showed that he sold defendant his farm for $1,500, about 8th May, 1857, and that defendant proposed to let the plaintiff have two mares and a wagon and harness, in part payment ; that for the purpose of completing the trade, defendant drove his mares, in the harness and attached to the wagon, to plaintiff's house, on the farm traded for, and hitched them to the fence in front of the house. The plaintiff came out, walked around the team, and inspected the mares, wagon and harness, but did not touch them, and they remained

where the defendant had tied them. The plaintiff then said the wagon did not suit him, but he would take the mares at $300, and the harness at $27, to which the defendant agreed. The plaintiff then said to defendant, (both standing by the team,) that he, the plaintiff, wanted the team to go to Texas, the next September; that he would like to have the team for three or four weeks before he started, to fit for the journey, and if defendant had any use for the mares, he could keep them until he would want them, some time in August following. . Defendant replied he had some work to do, and he would keep the mares. Plaintiff also remarked that he would be at work part of the time, on the farm sold, and the mares would be under his eye, and he could see if they were well treated, and if they were not, he could take them.

The plaintiff and defendant then went to the house, where defendant paid him the balance of the $1,500, in money, counting the horses and harness at $327, and plaintiff conveyed, or gave a bond to convey the land to defendant. Defendant then drove away the team, with the harness and wagon, as he came.

The plaintiff had no other possession, nor was there any other delivery than as here stated at that time.

Defendant kept and used the mares for about a month, at different kinds of work; and plaintiff proved that one of the mares, while so in defendant's use and possession, died, and introduced proof tending to show that defendant had mistreated the mare, and neglected to take proper care of both of them, and that the death of the one mare was in consequence of the mal-treatment and neglect of defendant.

Plaintiff then proved that on the day of the death of the one mare, the other was sent by defendant to plaintiff, who received her; and that the worth of the mare that died was from $130 to $150.

The defendant then offered proof tending to show that the mare died of some disease or accident, and that he took reasonable and proper care of her while she was in his possession, after the trade, and gave notice of her sickness to plaintiff, who stated that he could do no good if he went to see her, and did not go.

Defendant then proved, by one of the arbitrators, to whom was referred the question as to which of the parties should lose the price of the mare that died, that each of the parties made a statement of the facts before the arbitrators, for their action, and that in his statement, the plaintiff said that the mare was never in his possession, but he considered her as delivered, but claimed that she died from want of proper care by the defendant.

This was all the evidence.

The plaintiff then prayed the following instructions to the jury:

1. Although the jury believe, from the evidence, that the plaintiff considered the mare as his, and was of the opinion that the mare had been delivered to him, yet if they further believe, from the evidence, that there was in fact, no delivery, and that the opinion of the plaintiff was unfounded upon the law, then the jury will find that there was no delivery.

2. Although the jury believe, from the evidence, that the plaintiff, for the purpose of submitting the matter in controversy to referees, stated that he considered the mare as delivered, and that he made such statement to the referees, and thereby, for the purpose of obtaining the decision of the referees he waived a legal right, such admission and waiver does not bind him in this suit.

4. If the jury believe, from the evidence, that the defendant sold the mare in controversy to the plaintiff and received payment by a credit upon what was due from the defendant on the land purchased, and further, that the defendant never delivered the mare to the plaintiff, they will find for the plaintiff the value of the mare.

7. If the jury believe, from the evidence, that the defendant sold and received pay for the mare in controversy, and that at the time of the sale the mare was hitched to the wagon of the defendant, and that the defendant, after the sale and payment, without unhitching the mare, drove the mare away by the consent of the plaintiff, to keep her for a time, and with an agreement to deliver the mare afterwards, and that the mare was never otherwise in the possession of the plaintiff, such facts do not constitute a delivery.

8. If the jury believe, from the evidence, that the plaintiff sold a tract of land to the defendant, that the plaintiff executed a written contract to convey the land and delivered the possession of the land to the defendant, and that at the time the contract for the land was made, the defendant drove two mares to the residence of the plaintiff in a wagon, and hitched them to the fence; that the mares were left standing there for a short time, and driven away by the defendant; that while the mares were standing at the plaintiff's and when the contract was made, the plaintiff agreed to take the mares, at the price of three hundred dollars, in part payment for the land, and that the mares were credited at that sum, on the contract for the land; and that at the time the mares were at the plaintiff's, as above stated, the defendant drove away the mares in the wagon, as they came, with the consent of the plaintiff, to keep them for

two or three months, and that the plaintiff never had any other control or possession of the mares, then the jury will find that the mares were not delivered.

9.  In determining the question as to whether the defendant held the property at the time the mare died as a gratuitous bailee, the jury will consider the conversation of the parties by which the agreement was made, and in which the defendant obtained the mare, and they cannot determine that any other consideration existed than such as was disclosed in the conversation at the time.

And the court gave those numbered three, five and six, and refused to give those numbered one, two, four, seven and eight, and refused to give instruction number nine, as asked, but modified the same by adding thereto the words, " or by express or implied evidence," and gave such instruction as modified.  To which refusal, and to the giving said ninth instruction as modified, the plaintiff then and there excepted.

After retirement, the jury returned a verdict for the defendant, and the plaintiff thereupon moved for a new trial, and assigned as reasons the following:

1st.  Because the verdict of the jury is against the law and the evidence.

2nd.  Because the court erroneously refused to give the instructions to the jury asked by the plaintiff.

3rd.  Because the court erroneously refused other instructions to the jury, as asked by plaintiff, but modified the same before giving.

4th.  Because the court erroneously gave the instructions to the jury as asked by the defendant.

The court overruled the motion, and rendered judgment for defendant for costs ; to the overruling of which motion and the rendition of which judgment the plaintiff excepted.

The plaintiff now makes the following assignment of errors:

1st.  The Circuit Court erred in overruling the motion of the plaintiff below for a new trial.

2nd.  The verdict of the jury was against the law and the evidence.

3rd.  The Circuit Court erred in refusing to give proper instructions to the jury asked by the plaintiff.

4th.  The Circuit Court erred in giving improper instructions to the jury as asked by the defendant.

5th.  The Circuit Court erred in modifying one of the instructions asked by the plaintiff, and in giving the same so modified.

6th.  The Circuit Court erred in rendering judgment for the defendant below.

7th.  The proceedings are otherwise informal and erroneous.

GOUDY & JUDD, for Plaintiff in Error.

ROSS & SHOPE, and LOGAN & HAY, for Defendant in Error.

BREESE, J.   The principal question presented by this record is, were the mares sold and delivered to the plaintiff in error, Howard ?

We do not consider it important to inquire whether there was an actual delivery or not, it being sufficient, as between the immediate parties, Howard and Babcock, that a bargain was struck, and the title to the mares became vested in Howard.

We have gone over this whole ground in the case of *Wade* v. *Moffatts*, *post*, and reaffirm the doctrine there sought to be established.   The inaccuracy of the ninth instruction, made so by the qualification of the court, by the insertion of the phrase, " or by express or implied evidence," cannot be material.   The court evidently meant to be understood " or manifested by the circumstances of the case."   We say it is not material, because a delivery was a non-essential.   The sale was perfect without it.

The third instruction which the court gave for the plaintiff, was in these words—it is on a legal proposition : The delivery of an article of personal property or a chattel, is the transfer of the possession of the same by some person to another, so as to place the property in the power and control of such person. The fifth as given is, " If the jury believe, from the evidence, that the mare was hired to the defendant, then he would be bound to use such care as persons would usually exercise concerning their own property in like circumstances ; but if the jury believe, from the evidence, that the mare was loaned, without compensation, to the defendant, then he would be bound to use a greater degree of care, and to exercise extraordinary diligence, and such as the most prudent would use toward their own property."   And the sixth : " If the jury should believe, from the evidence, that the mare was delivered, and that after such delivery she was loaned without compensation to the defendant, and while she was in the possession, by such loan, of the defendant, the mare died, and was not returned to the plaintiff, then the jury will find for the plaintiff the value of the mare, unless they further believe, from the evidence, that the death was without the fault of the defendant, and that the defendant took extraordinary care of the mare, and that a slight degree of neglect in the care of such animal would render the defendant liable for any injury, or for the death of the mare in controversy, if produced by such neglect."

Thus it will be seen, the plaintiff had the full benefit of all the questions he could properly raise before the jury in his favor.

Let us see if the instructions given on behalf of the defendant misstated the law on the facts supposed.

The first is, " If the jury believe, from the evidence, that the mares in controversy were hired by Howard, the plaintiff, to Babcock, the defendant, to be used by him, and that they were mutually benefited by the arrangement, then Babcock is only required to use such care as ordinary prudent men with their property in taking care of the mares ; and if the jury further believe, from the evidence, one of the mares died, and that the defendant used such care and diligence in taking care of the mare, they will find for the defendant.

" That after the mare in controversy had been sold and delivered by the defendant to the plaintiff, that she was hired by the plaintiff to the defendant, and that the hiring was for the mutual benefit of the parties, then and in such case, the defendant is only required to use such care as ordinary prudent men take of their property, in taking care of the mare ; and if the mare, while thus in the care and possession of the defendant, died, and that the defendant took such care of the mare, they will find for the defendant.

" That the mare in controversy was borrowed by the defendant of the plaintiff, and that during the time she was so borrowed she died from some unavoidable accident, and the defendant used such care as the most prudent take of theirs, without any carelessness on the part of the defendant, they will find for the defendant.

" If they believe, from the evidence, that the mare in question in this case, died from inevitable casuality, or by causes or under circumstances over which the defendant had no control, and could not prevent, then they will find for the defendant, unless they further believe that the defendant was guilty of negligence or carelessness.

" That although they believe, from the evidence, that the defendant borrowed from the plaintiff the mare in question, yet if they further believe that the defendant used the same care and diligence, and prudence, in taking care of the mare the most prudent, careful man would take of his own property, placed under similar circumstances, then the jury will find for the defendant.

" That any admissions that may have been proved to have been made by plaintiff, are proper for the jury to consider in forming their verdict, and the jury will give any admissions, if any thus proved, such weight as they may think them entitled to."

These were excepted to by the plaintiff, and exception disallowed.

We think they clearly state the law, and the distinction so far as care and diligence are concerned, between a hiring and a borrowing, and do not differ essentially from those given by the court on behalf of the plaintiff.

There was proof that the plaintiff did not want to use the mares until the August following the purchase, and he stated it would be an accommodation to him for the defendant to keep them. It was an advantage, as he saved their keep and care by the arrangement, and was benefited to that extent. The benefit was mutual, under which state of case, no extraordinary diligence and care are requisite.

In the printed abstract of the plaintiff, the ruling of the court on the demurrer to the first, second and third counts on the award, is assigned for error, though it is not assigned on the record.

The plaintiff, however, considering that it is there assigned, commences his argument with that ruling.

The award is in these words, that Babcock pay to Howard, "the sum of money for which the said Howard received the said mare from the said Babcock, on the purchase of the same from him."

In each of these counts is an averment that the mare was in fact received by Howard on such purchase at one hundred and fifty dollars, and it is insisted that this averment makes the award certain.

It will be seen by the evidence, that no price was agreed on of any one mare. A pair was purchased at three hundred dollars. One of them, the surviving one, may have been worth two hundred dollars of that amount, for aught that appears. There is nothing to show they were of equal value, each one worth precisely one hundred and fifty dollars. The one that died may have been worth but seventy dollars. It is entirely uncertain at what sum Howard received her from Babcock, and the averment in the declaration don't help it. The award must be certain of itself, so that it can be easily comprehended, and capable of being carried into execution without the aid of extraneous circumstances. *McDonald* v. *Bacon*, 3 Scam. R. 431. How is the sum paid by Howard for the mare ever to be ascertained? It can't, from the very nature of the transaction, be ascertained. It does not follow, because he allowed $300 for the pair, he estimated the one that died at $150. No man can say what he allowed, although her value might be proved at that. One witness might swear to one sum, and another witness to a greater or less sum as her value, but neither could establish the sum of money in the language of the award, "for which Howard received the said mare from Babcock, on the purchase of the

same from him." No extraneous circumstances that should be resorted to, could possibly establish this fact, and therefore the award is void for this uncertainty, or impossibility, rather. If the award had said, in proportion to what he allowed for the pair—it would have been certain. Even the maxim, " *id certum est, quod certum reddi potest,*" will not avail the plaintiff, for no human power can make it certain. The plaintiff himself could not swear at what sum he received either of the mares from the defendant.

The cases referred to by the plaintiff's counsel from Vermont, *Wright* v. *Smith,* 19 Ver. R. 110, and *Cooley* v. *Dill,* 1 Swan, (Tenn.) 318, do not sustain his position.

In the Vermont case the award enjoined upon the defendant the payment of the *taxable* costs. What those were, is prescribed and fixed by the law; and in every given cause, the facts being given, the sum total of the taxable costs can be certainly ascertained. But if the sum was made certain by the averment in the declaration, there is still a fatal defect in each of the three counts. It is a rule in pleading, that when matter is more peculiarly within the knowledge of one of the parties than the other, notice is necessary to the other party, although the terms of the contract may not require it. The sum at which he received the mare, was certainly more in the knowledge of the plaintiff than of the defendant—in fact, in his knowledge alone. To have entitled him to recover, then, he should have averred in his declaration, that the sum was $150 at which he received the mare, of which the defendant had *notice* before suit brought. There is an averment that the defendant had notice of the award, but not of the sum the plaintiff claimed to have allowed for the mare.

But we question very much, if this would have helped an award so void as this is. No averment could help it, for no averment of the sum could be proved.

The case in 1 Swan R. 313, does not seem to have any application to the question made here. It merely decides that a certain award was final under the terms of the submission of the parties. This point we are considering was not before the court.

The judgment of the Circuit Court is affirmed.

*Judgment affirmed.*