Richard L. Manion, Appellee, v. Chicago, Rock Island and Pacific Ry. Co., and J. I. Case Co., Appellant.

Gen. No. 10,942.

Second District.

November 7, 1956.

Released for publication November 24, 1956.

1

5

Huber, Reidy & Katz of Rock Island, for appellant, J. I. Case Co.

Stewart & Lytton of East Moline (Walter J. Klockau, Jr. and Ben A. Stewart, of East Moline, of counsel) for appellee, Richard L. Manion.

JUSTICE CROW delivered the opinion of the court.

This is a proceeding by the J. I. Case Company, the intervenor-appellant, upon an amended and supplemental intervening petition in the pending cause to be reimbursed, or indemnified, under the then applicable Section 29 of the Workmen's Compensation Act (ch. 48, Ill. Rev. Stats., 1949, par. 166) for the amount of an award of workmen's compensation paid, or to be paid, to its employee, Richard L. Manion, the plaintiff-appellee, for certain injuries, after the employee had recovered a $12,500 judgment for damages for such injuries in a negligence action against a third party, the Chicago, Rock Island and Pacific Railway Company, the original defendant. The petition alleged, inter alia, the relationship between the intervenor and the plaintiff Manion of employer and employee; the injuries arising out of and in the course of his employment; the award of $8237.76, under the Workmen's Compensation Act; and that his injuries were not proximately caused by the negligence of the employer, the Case Company, or its employees, but were caused under circumstances creating a liability for damages

7

on the part of someone else. The jury rendered a verdict finding the Case Company, intervenor, guilty of negligence which was a proximate cause of the injuries to Manion, its employee, after the denial by the Trial Court of the motions of the plaintiff Manion for directed verdict at the close of the intervenor's evidence, and the respective motions of the plaintiff and intervenor for directed verdicts at the close of all the evidence. The Trial Court entered judgment on the verdict, after denial of the intervenor's motions for judgment notwithstanding the verdict and for new trial. This appeal is taken from that judgment.

It is the intervenor-appellant's theory that: (1) as a matter of law, there is no competent evidence of negligence of it or its employees proximately causing the injuries and the sole proximate cause thereof was either Manion's contributory negligence or the railroad company's negligence, or, alternatively, the verdict finding the intervenor guilty of negligence proximately causing the injuries is against the manifest weight of the evidence; (2) the Court erred in admitting certain testimony of an attorney for the plaintiff-appellee; and (3) the Court erred in refusing certain instructions for the intervenor-appellant and in giving certain instructions for the plaintiff-appellee.

The trial court, upon a prior hearing of the intervenor's original intervening petition to join in the action and for reimbursement out of the judgment for its workmen's compensation payments, had held, in effect, in sustaining the intervenor's motion to strike the plaintiff's answer to its intervening petition and in denying the plaintiff's motion to strike the original intervening petition, that it was not necessary for the intervenor to plead and prove freedom from negligence on its part and that of its employees (excluding Manion). On a prior appeal to this Court, by the present plaintiff-appellee, he having elected to stand

8

by his answer and a judgment having been entered for the intervening petitioner, that judgment was reversed and the cause remanded with instructions to overrule the intervenor's motion to strike the plaintiff's answer to the original petition, and to allow the intervenor to amend its petition in those particulars, if so advised: Manion v. Chicago, R. I. & Pac. Ry. Co. (1954), 2 Ill. App.2d 191. It was upon an amended and supplemental intervening petition subsequently filed that the cause was thereafter submitted to the present jury upon the sole issue of whether there was or was not negligence of the employer, the intervenor, or its employees (excluding Manion), which was a proximate cause of the injuries to the plaintiff employee.

Ch. 48, Ill. Rev. Stats., 1949, par. 166, being Section 29 of the Act, provided, in part, so far as material:

". . . *Where the injury or death for which which compensation is payable under this Act was not proximately caused by the negligence of the employer or his employees* and was caused under circumstances creating a legal liability for damages on the part of some person other than the employer to pay damages, such other person having elected not to be bound by this Act, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act. *In such case, however, if* the action against such other person is brought by the injured employee or his personal representative *and judgment is obtained* and paid, or settlement is made with such other person, either with or without suit, *then from the amount received by such employee or personal representative there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or personal representative. . . .*" (Emphasis added.)

9

■ Although there is no pleading by Manion, the plaintiff, specifically charging his employer, the Case Company, the intervenor, with any particular act or omission constituting negligence proximately causing his injuries, such was not necessary; the relief sought under the amended and supplemental intervening petition, pursuant to the statute, was necessarily based upon the affirmative allegation (in part) that neither the intervenor nor its employees (excluding Manion) were guilty of negligence that was a proximate cause of the injuries sustained; the burden to so plead and prove those statutory substantive requirements was on the intervenor: Manion v. Chicago, R. I. & Pac. Ry. Co., supra; and Manion's answer (in part) to the amended and supplemental intervening petition denied those allegations and denied the intervenor was entitled to be indemnified or reimbursed.

The evidence is somewhat in conflict, but the facts are substantially as follows, and where there is some material conflict in the evidence, we shall endeavor to note such:

On November 14, 1949, at about 9:00 p.m., Manion, in the course of his employment, was driving an empty material-hauling jeep north across a series of three east-west tracks of the Chicago, R. I. & Pac. Ry. Co., the original defendant, where the tracks traverse a concrete inter-plant crossing between portions of the Case Company's plant lying to the north and other portions thereof lying to the south of the tracks, at the Sixth Street crossing, Rock Island. The Case Company had, for many years, enjoyed an easement to cross the right-of-way at this point, but, subject to that, the railroad had complete ownership of its right-of-way, including the fixed equipment thereon and, of course, the trains operated thereon. The railroad had been doing some repair work at the crossing in the month prior to the accident. The general foreman, plant inspector, and safety engineer of the Case

Company knew that such work was being done. Manion and the other Case Company employees were expected and required to use that crossing in passing from and to the respective parts of the company's plant located on both sides of the tracks, when necessary in the discharge of their duties. The company's safety engineer said that this crossing was probably one of the most dangerous spots in the plant, that they confined their activities to the things that give them the most trouble, and though the right-of-way was in the "jurisdiction" (as he put it) of the railroad, the Case Company was concerned with and interested in the safety of its employees going from one part of the plant to the other and in the safety of the crossing. Manion's jeep was struck on the most northerly track by a westbound diesel switch engine operated by the railroad's crew, from which collision he received his injuries. Manion and his employer, the Case Company, were operating under the Illinois Workmen's Compensation Act.

Manion had been working the night shift for a considerable period of time prior to the accident, and had been furnished a jeep or small tractor and truck attached for the purpose of delivery of material in and to various parts of the Case plant located on the south side of the right-of-way, and occasionally, but not every night or regularly, was required to go to the company's foundry yard on the north side of the tracks to load material. On the evening in question, for the first time in the week before the accident, he was, in the performance of his duties, going to the north side of the tracks to load certain castings from the foundry yard there, and he used the same jeep he had been using previously. When empty the jeeps made considerable noise in going over the tracks. There were, Manion said, no headlights on the jeep, the original lights having been knocked off; he said there were lights on it during the week prior to the accident,—

but not on the night of the accident; Bill Griffith, another Case Company employee, said no lights were operating on Manion's jeep. There is contrary evidence to the effect there were lights on Manion's jeep, but, in any event, there were evidently no lights in operation on it at the time, either because they had been knocked off or were not turned on by Manion.

Because, for whatever reason, his headlights were not in operation, he had followed another jeep driver, the above Bill Griffith, who had lights on his jeep, out of a so-called tunnel-way from one of the buildings, going north toward the tracks. The so-called tunnel-way is evidently a vehicular passageway at ground level into or through one of the Case buildings south of the tracks. There was a mesh wire fence on the south side of the right-of-way extending easterly from a gate which gave access to the crossing. It was about 61 feet from the tunnel-way to that fence, and about 31 feet from the fence to the most northerly track at the crossing. It had been dark that evening since as early as six p.m., and Manion said he had been working all around the plant without lights on his jeep, which was contrary to the Case Company rules. Around nine p.m., he had asked Griffith to cross the tracks with him to help load the castings, and Griffith had preceded him out of the paint or repair shop south of the tracks and he followed Griffith's jeep, about a length behind. Manion stopped about opposite the end of the wire fence on the south side of the railroad right-of-way, and Griffith from then on evidently no longer paid any attention to him. Manion then just started off over the tracks, after glancing both ways a little and seeing nothing. Griffith did not look to observe Manion after Griffith started to cross the tracks, Griffith having no knowledge of Manion's activities from a point about 40 feet south of the tracks before the collision. Manion went right on from the

fence and did not look again as he crossed the series of tracks. There were no other railroad cars spotted on any tracks east of the crossing, nor were there any other obstructions on the right-of-way to vision to the east, although there was some lumber etc. material of the Case Company piled against its side of the wire fence on the south edge of the right-of-way which might have been a partial obstruction to vision to the east. Manion's jeep was struck when he arrived at the third or most northerly track north of the fence. He says he did not see or hear the westbound engine approaching from the east before he was struck. Griffith says he heard no bells or any other sound and saw no lights of the approaching engine, though there is evidence the engine headlights were on.

Manion had been bawled out by the Case Company several times before for not stopping at the tracks and looking before crossing, as required by the safety rules of the Company, and he admitted that a partial view of the tracks to the east was possible even in the area between the buildings lying to the south of the fence and the right-of-way.

There were some exterior lights on the Case Company buildings, north and south of the tracks, which were apparently turned on, which shown out over the area adjacent to the building to the south from which Manion emerged towards the tracks and over the area adjacent to the building to the north across the tracks, and which some witnesses said also tended to throw some light over the whole areaway at the crossing and on either side of the tracks, and some said that there was sufficient light at the crossing for visibility,—one of the intervenor's witnesses described the visibility on the right-of-way as "fair". The building to the south on which one or more of those exterior lights were affixed was evidently about 92 feet south from the most northerly track where the accident occurred, and

13

it appears from one of the photographs in evidence that between that building and the tracks and extending westerly from the gate in the mesh wire fence was a solid wooden fence, piled against which on the Case side was a large amount of coal or other material, some of it being higher than the wooden fence. The building to the north on which one or more of those exterior lights were affixed would appear from the photographs to be 30 feet or so north of the most northerly track and the points on that building where such lights were placed were evidently, respectively, some 40 to 50 feet west and some 70 to 80 feet or more west of the point of the accident and those lights were not pointed towards the crossing. The primary purpose of the exterior building lights was evidently, as the Case Company's plant inspector said, to light up the plant yards, and they were evidently particularly focused on the yards and not particularly, but only incidentally, if at all, on the inter-plant railroad crossing. Manion said those lights did not shed light all the way across the crossing, and he was not sure they were on that night. Griffith said there were no lights on the crossing area itself, the building lights did not light up the tracks at the crossing, it was very dark, and he could not see the roadway without the lights on the jeep he was driving. The weather was apparently clear.

Manion knew of the railroad's automatic crossing bell located on the right-of-way north of the northernmost track and somewhat east of the crossing, but he did not hear any bell ringing before the accident. The bell had been there a long time. Its purpose was to aid in protecting the crossing for the Case Company employees and anyone else using the crossing. When in operation that bell would ring upon a train's approaching within 100 to 200 feet of the crossing. He knew generally the time during the night shift when the railroad switch engine came in; he was travelling

14

only about three miles per hour after leaving the fence until he was hit; but he did not see or hear the approaching train. Manion was aware of the Case Company safety rules, which were posted, and which required the use of only safe equipment, and prohibited the use of defective equipment, which was to be promptly reported for repair, although apparently the company had no policy of inspecting the jeeps before they were used to see whether they were properly equipped. He had never complained to anyone in the company that he did not have lights on his jeep, or that they were defective. He had no previous notice that the automatic bell at the crossing was out of order or disconnected prior to the accident, and in the two or three weeks before the accident he had not noticed whether it was working or not. The bell had, in fact, been disconnected by the railroad company some 30 days prior to the accident and was not working at the time. There is some evidence, which we shall later refer to more particularly, to the effect that the intervenor had actual knowledge of the disconnection of the bell prior to the accident, but there is also evidence directly to the contrary. In any event, there was no notice on the company bulletin board that the bell was not operating, and the employèes customarily relied on the bulletin board for an indication of things that were not safe.

The Case Company evidently considered that warning bell of some importance because the general foreman said that if he had known it had been disconnected by the railroad such fact would have been noted on the bulletin board, and the safety engineer of the company said he was, of course, interested in knowing whether the bell was in proper operation or not and if he had known of its disconnection he certainly would have made inquiry relative thereto. Under the circumstances, the fact the bell was not operative at the time

can hardly be said, as the intervenor urges, to have had nothing to do with the accident; nor is it quite accurate to believe Manion did not in part rely upon such; nor is the importance thereof to be properly minimized, as the intervenor now urges, by the circumstance that Manion did in fact stop and look before crossing,—the jury could well have concluded that Manion would have not only stopped but remained stopped and never crossed at all if the bell had been operative,—particularly in view of the fact this crossing was admittedly one of the most dangerous spots in the plant and the Case Company was admittedly in fact, as it was in law, concerned with and interested in the safety of its employees going between the several parts of the plant and in the safety of the crossing.

The general foreman of the company had been in the neighborhood of the bell and crossing probably 50 times a day in the month prior to the accident, saw trains approaching, but did not know the bell was not operating. The plant inspector of the company may have been at the crossing many times in the month prior to the accident but he could not remember whether the bell was ringing or not. The safety engineer of the company was over this crossing at least once a day prior to the accident, but did not know the bell was out of operation.

The Trial Court proceeded upon the theory, properly, that there could be more than one proximate cause of these injuries, that they may have resulted from the joint, concurrent, or combined negligence of the employer, or its employees (excluding Manion), and the third party railroad, and that the prior finding of the jury against the railroad did not preclude a finding also against the Case Company under the pleadings presently before the Court: Manion v. Chicago, R. I. & Pac. Ry. Co., supra. The burden of proof, as we've said, in this particular proceeding was upon

16

the intervenor, Case Company, to establish affirmatively by a preponderance of the evidence its and its employees' (excluding Manion) freedom from negligence which was a proximate cause of the injuries.

First, then, was the evidence sufficient for the jury to find, as it did, against the intervenor and to the effect that there was some act or acts of commission, or omission, on its part or on the part of its employees (excluding Manion) which constituted negligence which was a proximate cause of the injuries to Manion, or, perhaps more accurately stated under the statute, was the evidence sufficient for the jury to find, as it did, that the intervenor did not show by a preponderance of the evidence that the injuries were not proximately caused by its or its employees' (excluding Manion) negligence?

 Only where there is a complete absence of probative facts to support the conclusion drawn by the jury is it reversible error to overrule a motion for directed verdict or for judgment notwithstanding the verdict: Lindroth v. Walgreen Co. et al. (1950) 407 Ill. 121; Neering v. Illinois Cent. Ry. Co. (1943) 383 Ill. 366; Blumb v. Getz (1937) 366 Ill. 273; Bonnier v. Chicago, B. & Q. Ry. Co. (1954) 2 Ill.2d 606; Tennant v. Peoria & Pekin Union Ry. Co. (1943) 321 U. S. 29, 88 L. Ed. 520. Where a law case is tried by a jury and the evidence is conflicting we cannot, as an original matter, weigh and determine on which side the preponderance of the evidence lies and enter an original judgment on our consideration of the evidence contrary to the verdict of the jury: Phillabaum v. Lake Erie & Western Ry. Co. (1924) 315 Ill. 131. Whenever facts are in dispute or the evidence is such that fair minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable infer-

ence: Lavender v. Kurn (1945) 327 U. S. 645, 90 L. Ed. 916.

■■■■ What is a proximate cause of an injury is ordinarily a question of fact, to be ascertained and settled by the jury from a consideration of all the evidence and attending circumstances,—it can arise as a question of law only when the facts are not only undisputed but are such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from the facts: Phillabaum v. Lake Erie & Western Ry. Co., supra. The alleged negligent act or omission must be one of the essential causes producing the injury, but it need not be the sole, or last, or nearest cause; it is sufficient as a proximate cause if it concurs with some other cause acting at the same time, and in combination with it causes the injury: Thomas v. Chicago Embossing Co. (1923) 307 Ill. 134. An intervening, efficient cause is a new and independent force, the intervention of which was not probable or foreseeable by the first wrongdoer, which breaks the causal connection between the original wrong and the injury and itself becomes the sole direct and immediate cause of the injury: Phillabaum v. Lake Erie & Western Ry. Co., supra; Neering v. Illinois Cent. Ry. Co., supra. The intervention of independent, concurrent, or intervening forces will not break causal connection if the intervention of such forces was itself probable or foreseeable: Neering v. Illinois Cent. Ry. Co., supra.

■■■ As to the intervenor's motion for new trial, insofar as general evidentiary matters are concerned, the determination of the weight and preponderance of the evidence, the credibility of the witnesses, and the drawing of legitimately possible and reasonable inferences and conclusions from the facts in evidence fundamentally are jury functions, with which we will not interfere unless the verdict is against the manifest

18

weight of the evidence or the inferences drawn are unreasonable.

A master must use reasonable care to furnish his servants with a reasonably safe place for the performance of their work, and he is responsible for the negligent performance of such duty, whether he undertakes its performance personally or through another person; the master is responsible where the circumstances are such that by the exercise of due care he ought to have had notice of the defective condition, whether he had actual notice or knowledge or not: Missouri Malleable Iron Co. v. Dillon (1903) 206 Ill. 145; John S. Metcalf Co. v. Nystedt (1903) 203 Ill. 333. A master must also use ordinary care to provide the employee with reasonably safe appliances or equipment with which to work; this duty and the duty to use reasonable care to furnish a reasonably safe place for the work are personal, and if the employer delegates their performance to someone else he is responsible for the manner in which they are performed; these duties may require inspection at reasonable intervals of the place or equipment, and the duty of inspection rests upon the employer and not upon the employee: Armour et al. v. Brazeau (1901) 191 Ill. 117. That a particular place where the employee is required to work is dark and the terrain uneven, if such are the facts, may constitute an unsafe working place contributing in part to an employee's injury, even though the area is not owned by the employer but is part of a public street: Lavender v. Kurn et al., supra. A railroad company employer has a duty to use reasonable care to see that the tracks which it uses are safe, whether the tracks are owned by it or not; where an employee of such a company is directed to use the tracks of another company in the business of his employer he may for this purpose treat the tracks as the tracks of his employer; his employer under such

19

circumstances owes the employee a duty to use reasonable care to see that the tracks, even though not owned by it, are not in a condition which will unnecessarily endanger the employee: Wisconsin Central Ry. Co. v. Ross (1892) 142 Ill. 9. The master's duty includes using reasonable care to see that an independent contractor does not, to the knowledge of the employer, by his negligence render unsafe the place where the employee is required to work; and if the employer knows or in the exercise of reasonable care should know of a defective or unsafe condition caused initially by the independent contractor and nevertheless requires the employee to continue to work where he is exposed to injury because thereof, the employer is responsible to his employee: Raxworthy v. Heisen (1916) 274 Ill. 398. This is not to say the employer is responsible for the negligence, as such, of the independent third party, or for some suddenly occurring negligent act of the independent third party, or for some cause created by the third party which the employer did not know of, actually or constructively, or could not in the exercise of reasonable care have anticipated. But the employer cannot simply throw up his hands and abdicate or disclaim any responsibility for the safety of the employee's place of work merely because that place is owned by someone else or merely because one of the circumstances which may make it unsafe is caused in the first instance by someone else. The employer has a duty of his own in the premises and is responsible for his own negligence.

The evidence, conflicting as it was in some respects, and the reasonable inferences which might be drawn therefrom, presented to the jury, we believe, proper questions as to whether Manion's jeep was equipped with lights which were capable of being operated, i.e., whether the intervenor had furnished its employee with reasonably safe equipment with which

20

to work and perform his duties,—a duty upon the intervenor employer which it could not effectively delegate, and which might reasonably require inspection thereof at reasonable intervals; whether the intervenor's factory yard, the inter-plant crossing and, particularly, the point of this accident, and the immediately adjacent area, were reasonably adequately lighted, and whether the intervenor actually knew, or reasonably should have known and exercised ordinary care to ascertain that the warning bell had been for some time disconnected, and to notify its employee thereof or take such other steps as that circumstance might indicate to be reasonable and proper, i.e., whether the intervenor had furnished a reasonably safe place for its employee to work and discharge his duties; and whether Griffith, the other Case Company employee, was himself negligent as to Manion in the manner in which he drove the other jeep preceding Manion (which, if found to exist, would, of course, not only be negligence as to Griffith, the intervenor's employee, possibly, under the statute, sufficient in itself as a proximate cause to bar recovery by the intervenor here, but also, under principles of respondeat superior, negligence as to the Case Company in this particular case). We believe the jury could, under the circumstances, reasonably and properly find from the evidence that the intervenor had not, by a preponderance of the evidence, proven its ultimate freedom of itself and its employees (excluding Manion) from negligence proximately, in part, causing Manion's injuries.

■ This is not a case such as Storen v. City of Chicago (1940) 373 Ill. 530, or Seith v. Commonwealth Elec. Co. (1909) 241 Ill. 252, referred to by the intervenor, the facts in neither of which resemble the case at bar, where a negligent act or omission does nothing more than furnish a *mere condition* making an injury

21

possible, and such condition, by the *subsequent act* of a third person, causes an injury, the *two acts being not concurrent,* in which circumstances the existence of the mere condition is not the proximate cause of the injury. Nor are the railroad crossing cases of Greenwald v. Baltimore & Ohio Ry. Co. (1928) 332 Ill. 627, Grubb v. Illinois Terminal Co. (1937) 366 Ill. 330, or Carlin v. Grand Trunk Western Ry. Co. (1909) 243 Ill. 64, cited by the intervenor, helpful to it here,—the facts in each were much different than here, the particular problem and issue involved was not the same, and it may be observed that in only one, the Greenwald case, was the alleged negligence of the injured claimant considered to be a question of law requiring a directed verdict,—in the others, the Grubb and Carlin cases, the question was held to be a question of fact for the jury's consideration. The jury here may, in part, have concluded that the fact the warning bell was not ringing amounted to an invitation to Manion to proceed and an assurance that he could cross in safety: Humbert v. Lowden (1944) 385 Ill. 437.

Second, did the Court err in admitting certain testimony of an attorney for the plaintiff-appellee? Ray Rowley, the safety engineer of the Case Company was the last of several witnesses for the intervenor. On direct examination he said, among other things, that before the accident there was no report to him that the crossing warning bell was out of operation and he did not know it was out of operation. Robert Graham, one of the attorneys for the plaintiff Manion, cross examined the safety engineer and the witness again reiterated that he did not know and had not been told the bell had been disconnected. Mr. Graham then called the witness' attention to the fact he had some time before been subpoenaed as a prospective witness for Manion in Manion's original trial against the railroad company, in which Mr. Graham also represented

22

Manion, and he was then asked if he did not recall a conversation then with Mr. Graham in the Circuit Clerk's office about the bell in which the witness had said the bell had been disconnected for almost a month, and the railroad had told him about it, so he did not think Mr. Graham would want to call him as a witness for Manion,—he did not think he could do Manion any good. The witness said he did not remember any such conversation, he would not definitely state he did not make the alleged statement, but he did not recollect it. Mr. Graham, one of the attorneys for Manion, then later testified as the last witness for Manion in this case, and he said that Mr. Rowley had made the foregoing statement, in substance, about the bell at the time and place indicated, and that following such Mr. Graham told him he would not be called as a witness for Manion in that prior case.

 The testimony of an attorney for one of the parties is not incompetent or inadmissible just because he is such attorney, and the fact of his employment goes only to the weight of his testimony: Reisch v. Bowie et al. (1937) 367 Ill. 126; Hotze et al. v. Schlanser (1951) 410 Ill. 265. It has been suggested that,—aside from the legal competency thereof,—it is not necessarily improper for an attorney to so testify if the necessity of his doing so results from some unforeseen emergency event occurring in the progress of the trial: McKey v. McKean (1943) 384 Ill. 112. None of the cases cited by the intervenor,—Wilkinson v. People (1907) 226 Ill. 135, Flynn v. Flynn (1918) 283 Ill. 206, Grindle v. Grindle (1909) 240 Ill. 143, or Chicago Union Traction Co. v. Ertrachter (1907) 228 Ill. 114, hold that such testimony is incompetent or inadmissible or error or prejudicial error,—though most of them do, quite properly, discountenance and discourage such as a matter of general good practice. The testimony here of the attorney for the plaintiff-

23

appellee was, therefore, not incompetent or inadmissible, there was no error in admitting it, and the weight thereof was for the jury to determine in the light of all the pertinent circumstances.

Third, did the Court err in refusing certain instructions for the intervenor and in giving certain instructions for the plaintiff?

The intervenor complains of the plaintiff Manion's given instructions Nos. 2 and 6.

No. 2 was as follows:

"The jury are instructed that any admission which may have been proved to have been made by J. I. Case Company or its agents are proper for the jury to consider in arriving at your verdict, and you will give any admission, if any, thus proved, such weight as you may think them entitled to."

No. 6 was as follows:

"The Court instructs the jury that a person or corporation engaged in a business dangerous to the lives or limbs of its employees, must exercise reasonable care and caution in conducting its business commensurate with the danger, and as the danger increases, the care and caution to prevent or avoid such danger, must also proportionately increase."

 The intervenor says No. 2 could only have referred to the supposed admission of its witness Mr. Rowley to Attorney Graham, and thus "compounded" the "consequences" of Mr. Graham's testimony, and emphasized a particular portion of the evidence, focusing the jury's attention on Rowley as having made a disastrous admission. There were other matters in evidence besides that which might be considered as admissions by the intervenor, such as that it knew the railroad was doing some repair work at the crossing in the month prior to the accident, that Manion had to use this crossing when necessary in the discharge of

24

his duties, that it was probably one of the most dangerous spots in the plant, that the intervenor was concerned with and interested in the safety of its employees going from one part of the plant to the other and in the safety of the crossing, that when empty the jeeps made considerable noise in going over the tracks, that the exterior lights on the building to the north of the tracks were not pointed towards the crossing, that the primary purpose of the exterior lights was evidently to light up the plant yards and not particularly the inter-plant railroad crossing, that there was no notice on the bulletin board that the bell was not operating, that the employees customarily relied on the bulletin board for an indication of things that were not safe, that if it had known the bell was disconnected such fact would have been noted thereon, and the circumstances as to its general foreman's, plant inspector's, and safety engineer's familiarity with the crossing prior to the accident from which the jury may well have inferred an implied and constructive knowledge by it of the disconnection of the bell. We cannot say this instruction unduly emphasized only Mr. Rowley's and Mr. Graham's testimony. The intervenor refers us to no authority to the effect it is erroneous. So far as we can perceive it is accurate: Hemphill, Ill. Jury Inst. Vol. 1, p. 146; Howard v. Babcock (1859) 21 Ill. 259. There was evidence upon which to base it. Further, the intervenor's given instruction No. 1, which we shall not set out in full, referred to the testimony of the company's employees and that was an additional justification for the giving of the plaintiff's instruction No. 2.

 The intervenor says No. 6 states an impossible rule of law, imposes an unwarranted burden on the intervenor, and has no foundation in the pleadings or evidence. The intervenor's amended and supplemental intervening petition alleged, necessarily generally, un-

25

der the statute, that the plaintiff's injuries were not proximately caused by its or its employees' negligence, and the plaintiff's answer simply denied those allegations. The burden under this statute to so plead and prove was on the intervenor. There was no obligation on the plaintiff to do more by his pleading than he did. He was not required under the statute to assume the burden of pleading and proving any particular allegation of negligence by the intervenor or its employees. This instruction is within the general scope of the pleadings. This railroad crossing was an inter-plant crossing, running between several buildings of the intervenor's business plant, Manion had to use it when necessary in the discharge of his duties, the intervenor's own safety engineer characterized it as probably one of the most dangerous spots in the plant, the jeeps when empty necessarily made considerable noise in going over the tracks, the exterior building lights on the buildings to the north were not pointed towards the crossing, the primary purpose of the exterior lights was evidently to light up the plant yards and not particularly the inter-plant crossing, the crossing warning bell was disconnected, the intervenor may have had actual knowledge thereof or may have had constructive notice and knowledge thereof, and no notice thereof was on the bulletin board. Under those and the other circumstances in evidence this instruction had a foundation in the evidence. It is generally recognized that railroad crossings are dangerous places: Greenwald v. Baltimore & Ohio Ry. Co., supra; Carlin v. Grand Trunk Ry. Co., supra. Again, the intervenor refers us to no authority that it is error to give such instruction in these circumstances,—Ratner v. Chicago City Ry. Co. (1908) 233 Ill. 169, does not so hold. An almost identical instruction was given and approved in Quincy Gas & Electric Co. v. Bauman (1902) 104 Ill. App. 600, affirmed 203 Ill. 295; Hemp-

26

hill, Ill. Jury Inst., Vol. 1, p. 517; Vol. 2, p. 274. The instruction refers to nothing which does not have some reasonable basis in the evidence.

The intervenor complains of the refusal of its offered instructions Nos. 5, 6, and 7.

No. 5 was as follows:

"The Court instructs the jury that where an injury is claimed to be the direct or proximate result of negligence, the injury must be the natural and probable result of the negligent act or omission charged, and be of such a character as an ordinarily prudent person ought to have foreseen might probably occur as a result of such negligence, although it is not necessary that the said person should have foreseen the precise injury which might result from his act. If the negligence charged does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by reason of the subsequent independent act of a third person, the creation of the condition is not the proximate cause of the injury."

No. 6 was as follows:

"The Court instructs the jury that even though you may believe from the evidence that the J. I. Case Company maintained a condition within its plant at and near the railroad crossing in question in this case, and that the maintenance of said condition was, under the instructions in this case, negligence, if you so find from the evidence, nevertheless, if you further find that such condition did nothing more than furnish a condition or place where the accident could or did happen, but that the accident resulted directly and immediately from some act of negligence on the part of the Chicago, Rock Island and Pacific Railway Company, or its employees, then you are instructed that the mere furnishing of the condition by said J. I. Case

27

Company could not, in and of itself, be sufficient to establish that the J. I. Case Company proximately caused the injuries in question to Richard L. Manion."

No. 7 was as follows:

"The Court instructs the jury that if you find from the evidence in this case that the claimed negligent act or omission, if any, of the J. I. Case Company, did nothing more than furnish a condition which made the injury of Richard L. Manion possible, and that such condition, by reason of the subsequent act or omission of the Chicago, Rock Island and Pacific Railway Company, resulted in the accident and injury in question here, then you are instructed that the mere existence of the condition as furnished by the J. I. Case Company was not the proximate cause of the accident in question, and it would be your duty to find the J. I. Case Company not guilty."

Each of these offered instructions substantially directed a verdict, and when an instruction is of that type it should state all the essential facts and conditions, which none of them did: Ratner v. Chicago City Ry. Co., supra. It is not necessary or proper to encumber the record with several instructions covering the same matters, differing only in verbiage; except for the first sentence of No. 5, each of these were, in effect, simply changes in verbiage from the others, and would have tended rather to confuse than enlighten the jury: Coal Creek Drainage & Levee District v. Sanitary District of Chicago (1929) 336 Ill. 11. The intervenor refers us to no case in which an instruction or instructions of that type have been given and approved or in which the refusal to give such has been held error or reversible error. There is, of course, a general principle that if a negligent act or omission *does nothing more* than furnish a condition making an injury possible, and such condition,

28

by the *subsequent* act of a third person, causes an injury, the two acts are *not concurrent,* and the existence of the condition, under such circumstances, is not the proximate cause of the injury: Storen v. City of Chicago, supra, and Seith v. Commonwealth Electric Co., supra, cited by the intervenor, though the facts in neither resemble the case at bar. That principle is a part of the law of proximate cause and intervening, efficient cause. The offered instructions ignore a considerable amount of evidence to the effect that, and from which the jury might find, the defendant's alleged acts or omissions amounted to something considerably more than merely furnishing a condition making an injury possible, but constituted more active ingredients currently operating to cause, in part, the injuries, and to the effect that the acts of the railroad or Manion were not necessarily "subsequent" and noncurrent, in the sense of the general principle, but could well have been found to be concurrent and contemporaneous with the intervenor's own acts or omissions as they may have been found from the evidence. Where the circumstances are such that the injurious consequences might reasonably have been foreseen as likely to result from the first allegedly negligent act or omission, the act of the third person which is alleged to be an intervening cause will not excuse the first alleged wrongdoer: Seith v. Commonwealth Electric Co., supra. Under the circumstances, the offered instructions would have been confusing, incomplete, and misleading. Further, the intervenor's given instructions Nos. 5, 6, 8, and 10 adequately and fairly informed the jury on negligence and proximate cause.

The judgment will, accordingly, be affirmed.

Affirmed.

DOVE, P. J. and EOVALDI, J., concur.