FOOD FAIR STORES, NEW CASTLE, INC., a Delaware Corporation, Defendant Below, Appellant, v. ANNE G.E. HOWARD and HARRY S. HOWARD, Plaintiffs Below, Appellees.

(*July* 22,1965)

WOLCOTT, C.J., CAREY, J., and SHORT, Vice-Chancellor, sitting.

*Harold Leshem,* for appellant.

*Samuel R. Russell,* of Bayard, Brill, Russell & Handelman, for appellees.

Supreme Court of the State of Delaware. No. 100, 1964.

CAREY, Justice:

The defendant below has appealed from an adverse judgment entered in the Superior Court upon a jury verdict. This case was before us earlier, at which time we reversed a summary judgment in defendant's favor because it appeared that there were issues of material fact which required a trial. *Howard v. Food Fair Stores,* Del., 201 A.2d 638. The contention now made is that the trial Court erred in refusing to direct a verdict on the ground that plaintiffs failed to prove negligence. Alternatively, it is argued that a new trial should be ordered because the Court below erred in admitting certain testimony.

Mrs. Howard suffered injuries as the result of a fall in defendant's supermarker on July 30th, 1962. The evidence presented at the trial differed only slightly from that which was in the record before us on the earlier appeal. It need not be fully repeated here. The jury's verdict necessarily means a finding that her fall was proximately caused by a dangerous condition on the floor, of which defendant had actual notice, or which should have been known to it, and that she was not guilty of contributory negligence.

There was testimony to show the existence of a wet spot

about 36 inches large on the floor; there was also testimony to show the existence of some greasy black marks about an inch wide which "looked as though they had been made by the wheels of a cart, one of the produce carts or whatever it is they carry groceries that they stock on the shelves in". Both the wet spot and the greasy marks were at the place where Mrs. Howard fell. She, of course, could not say whether the fall was primarily caused by the wet spot or by the greasy substance or by a combination of the two. The nature of her fall, plus the fact that she walked through the greasy marks before reaching the wet spot, would justify the jury in concluding that the grease was the primary cause.

In the light of the verdict, the only question for our consideration concerning the denial of a directed verdict is whether defendant had, or should have had, notice of the slippery condition. We think there was evidence to justify a finding for the plaintiffs on this point. A fair inference is that the marks were caused by the wheels of carts used in the store. If, as Mrs. Howard indicated, they were made by the kind of cart used only by employees, the defendant would be charged with actual notice, since its own agents would have created the condition. If, on the other hand, they were made by the kind of carts which customers push through the aisle, as the witness Nutter may have meant to say, there is still other evidence sufficient to charge the defendant with notice.

Mr. Embert was the defendant's "porter", whose duty it was to keep the floor clean during his working hours, i.e., 8 A.M. to 12 noon. He completed cleaning the floor about 9:30 and thereafter made eight or ten tours through the store, seeing nothing unusual on the floor. When he left about noon, he walked out through the very aisle in which Mrs. Howard fell, again looking at the floor and seeing nothing unusual, according to his testimony. As he agreed, her fall must have taken place within a very few minutes after he left.[1] She came into the store around noon time and walked directly to and through the aisle where

---

[1] Our prior opinion indicated a possible interval of fifteen minutes, but the trial testimony shows that it must have been a considerably shorter period of time.

she fell, that aisle being directly in front of the door. When Embert left, as well as when she entered, no one else was in this aisle. The uncontradicted testimony shows that very few people were in the store at the time; in fact, it was about fifteen minutes after her fall before anyone heard her cries and came to her aid. Mr. Nutter testified that there were several sets of black marks, not merely one set, which criss-crossed. This would suggest (assuming the marks were made by customers' carts) that several customers must have used this aisle during the very short interval between Mr. Embert's exit and Mrs. Howard's entrance; yet, for the reasons stated, it is highly improbable that anyone had travelled the area during that interval and, almost certainly, several people had not done so.

We think the foregoing testimony justified a finding that the foreign matter must have been on the floor when Embert came through the aisle but that he either failed to see it or ignored it, although it was his duty to see it and to clean it up. His knowledge, whether actual or constructive, is chargeable to his employer. We conclude that the proofs met the requirements laid down in *Wilson v. Derrickson,* Del., 175 A.2d 400, and that the trial Court correctly declined to direct a verdict.

The alternative application for a new trial is based upon the fact that Mr. Keil, an attorney, was permitted in plaintiffs' case in chief to testify concerning the condition of the floor as observed by him on the morning of the day after the accident. He testified that, at the place pointed out to him by certain employees of defendant as the location of the fall, there existed slippery black marks. Defendant argues that the law of this State forbids an attorney who represents or has represented a party, as well as members of that attorney's firm, from testifying except as to purely formal matters. It also argues that his testimony was inadmissible in any event because there was no proof that the floor was in the same condition when he saw it as it was the preceding day.

When this accident happened and for some time thereafter, Mr. Keil was employed as a salaried employee by the law firm representing

the plaintiffs. He had no interest in this case other than his usual interest in any business of the firm. Early on the day after Mrs. Howard's accident her husband engaged that firm to represent them. Acting upon instructions of a superior, Mr. Keil went to the hospital and talked to Mrs. Howard for only a few moments, whereupon he went directly to the supermarket and noted the condition he described. When suit was commenced he signed the complaint and later signed various other papers. He also attended the taking of several depositions. In August, 1963, however, he took a leave of absence from the firm in order to become Administrative Assistant to the Governor, a full time position which he was still occupying at the time of trial. After taking that position, he did no work for the law firm and received no pay from it. Moreover, he thereafter had no further connection with this case except to sign an affidavit, although he did not go through the formality of causing his name to be stricken from the docket.

A number of decisions in this State have prohibited an attorney or anyone associated with his office from testifying in cases where that attorney was, or had been prior to trial, counsel for a party. Other cases have limited testimony given by such person to purely formal matters and to admissions made by the opposite party. *Wallace v. Wilmington & N. R. Co.,* 8 Houst. 529, 18 A. 818; *Pritchard v. Henderson,* 3 Pennewill 128, 50 A. 217; *Real Estate Trust Co. v. Wilmington & N. C. Elec. Ry. Co.,* 9 Del. Ch. 99, 77 A. 756; *Gray v. Pennsylvania R. R. Co.,* 3 W. W. Harr. 450, 139 A. 66; *Jolls v. Keegan,* 4 Pennewill 21, 55 A. 340. Yet in *Johnson v. Farmers' Bank,* 1 Har. 117, a party's former counsel was allowed to testify to a matter involving the merits; this was also apparently true in *Solomon v. Loper,* 4 Har. 187. In *Nye Odorless Incinerator Corp. v. Felton,* 5 W. W. Harr. 236, 162 A. 504, the Court stated the disqualification of an attorney as a witness depends on the character of the testimony sought to be elicited. We find no instance in which the highest Court of the State has considered the matter.

It is difficult to reconcile the holdings of the foregoing cases or to draw any clearcut rule from them. Some of the older ones are obviously based upon the old common law rule disqualifying any witness having an interest in the case. Of course, that ground for

disqualification was long ago removed by statute. T. 10 *Del. C.* Sec. 4302. Others seem to be concerned with the attorney-client privilege of non-disclosure of confidential communications, but clearly, since that privilege may be waived by the client, it furnishes no sound basis for disqualifying the attorney completely as a witness. Whatever theory may have formerly induced the Courts to exclude such testimony, it is still true that practically all Courts frown upon an attorney acting as both witness and advocate for his client. Ample justification for preventing this practice from becoming prevalent is found in the need to maintain due respect for the integrity of the legal profession, which is bound to suffer from such conduct. Our own feeling of distaste is demonstrated by our adoption of Canon 19 of the Rules of Ethics promulgated by the American Bar Association. Supreme Court Rule 33, *Del. C.* Ann. Under that Canon, it is unethical for a trial attorney to testify for his client, save as to formal matters. If the attorney knows in advance that he is to be a witness to matters not merely formal he should withdraw as counsel. The Canon has been interpreted as applying to a member of the trial attorney's firm. Drinker on Legal Ethics, 159.[2]

Canon 19 is, of course, a rule of ethics governing conduct of attorneys, for the violation of which an attorney is punishable. It is not designed to penalize the litigant by depriving him of the benefit of testimony which may be vital to his case. Accordingly, the great weight of authority today holds that the attorney's testimony is not rendered inadmissible by the ethics rule, because the client would otherwise suffer a punishment which ought to be imposed upon the lawyer. The threat of such sanctions is deemed "competent to suppress evils of this character". *Erwin M. Jennings Co. v. DiGenova,* 107 Conn. 491, 141 A. 866. A fortiori, the Canon does not forbid testimony by an attorney who is no longer representing the client; by withdrawing from the case, he has complied with the express provision of the Canon.

For the foregoing reasons, we are of the opinion that the

---

[2] An implied exception perhaps exists where the attorney does not realize the need for his testimony until too late to retire as counsel in the case.

trial Court committed no reversible error in permitting Mr. Keil to testify. VI Wigmore on Evidence (3rd Ed.) Sec. 1911; 3 Jones on Evidence (5th Ed.) 1565; *Ford v. District of Columbia*, D.C. Mun. App., 96 A.2d 277; *American Security Co. v. Shatterproof Glass Corp.*, D.C. 154, F. Supp. 890; 118 A.L.R. 954.

We emphasize that nothing herein is intended by implication to cast reflection upon any attorney connected with the case. All we hold is that, regardless of the former decisions in this State, a litigant's past or present attorney is not disqualified as a witness in the case.

Appellant's final contention concerns one item of evidence given by Mr. Keil, namely, his description of the floor as seen by him the day following the accident. To discuss this matter properly, we must describe part of the record in detail.

Mr. Keil was asked to describe what he saw. Objection was made to that question on the ground that there had been no proof that the condition of the floor was unchanged since the morning before. This objection was sustained. Plaintiff's counsel then asked this question:

"Did Miss Moreland [an employee at the store] tell you the floor was the same as it had been?"

After some colloquy, the question was reworded as follows:

"What, if anything, did Miss Moreland tell you about whether or not the conditions of the floor had been changed since the time of the fall?"

To this question the witness gave this answer:

"We observed the marks that were on the floors. They were black marks presumably made by a round wheel on a cart."

The following remarks ensued:

Mr. Leshem: "Objection to that answer 'presumably'. He doesn't know. This is really speculative, We are getting into real speculation here, your Honor."

The Court: "All right, strike the answer and I will tell the jury not to consider it. Either he knows or he doesn't know, Mr. Russell."

Mr. Leshem: "That is right, your Honor".

Mr. Russell: "Can't we have it clear, your Honor, that you are striking that part of the answer beginning with 'presumably'?"

The Court: "That is right, 'presumably'."

Mr. Russell: "But the other part of the answer remains in the record."

The Court: "The fact that he saw black marks remains in."

Thereafter the examination was continued without further objection although it was never shown that the condition of the floor was unchanged.

It will be noted that defendant's counsel had obtained a favorable ruling to his objection on this point. Plaintiff's counsel then asked a question intended to meet that requirement, but the answer given was not responsive; it stated what the witness had seen. Thereupon, instead of asking the Court to strike the answer as being unresponsive and contrary to the former ruling, counsel raised a new objection aimed only at the last part of the answer and the Court did exactly what he requested, i. e., struck the last few words as being speculative. In short, the Court gave defendant the precise relief it asked for.

We think the situation was such as to require counsel to indicate his continued reliance upon his former objection, and that his failure to do so amounted to a waiver of the objection; it seems obvious that both

the Court and opposing counsel considered it as such. Had he asked that the whole answer be stricken because the proper foundation had not been laid, the matter could have been cleared up then and there. Under the circumstances, we think the defendant is not in a position to raise this contention as ground for new trial.

The judgment of the Court below will be affirmed.