No. 48,408

FARMERS INSURANCE EXCHANGE, *Appellant,* v. MICHAEL D. SCHROPP, a Minor, and The Estate of Clint R. Sohl, Deceased, *Appellees.*

(567 P.2d 1359)

Opin-
ion filed July 11, 1977.

*Christopher A. Randall,* of Wichita, argued the cause, and *Lee Turner* and *Raymond L. Dahlberg,* both of Turner and Hensley, Chartered, of Great Bend, were with him on the brief for the appellant.

*Robert L. Howard,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *Gerald Sawatzky,* of the same firm, was with him on the brief for appellee, Michael D. Schropp. *Thomas J. Berscheidt,* of Ward & Berscheidt, of Great Bend, argued the cause, and was on the brief for appellee, The Estate of Clint R. Sohl, Deceased.

The opinion of the court was delivered by

MILLER, J.: Farmers Insurance Exchange appeals from judgments in excess of its policy limits, entered against it and in favor of Michael D. Schropp and the Estate of Clint R. Sohl, deceased, following a jury trial. Farmers raises a barrage of issues which will be discussed later in this opinion.

This action was commenced as a declaratory judgment suit by Farmers. It arises out of a two-car collision which occurred on October 25, 1969, on U.S. Highway No. 56, near Ellinwood, Kansas. Clint R. Sohl, insured by Farmers, was driving an east-bound vehicle, a Ford Falcon. He was accompanied by a friend, Daryl C. Thompson. Michael Blackman was driving a Plymouth

sedan in a westerly direction on the same highway. Passengers in the Blackman car were Michael D. Schropp, Stephen L. Dunham and Stephen M. Arnold. The Ford driven by Sohl veered into the left or westbound lane as it rounded a curve. It collided with the Blackman Plymouth, striking it fully front to front in the westbound lane. The physical evidence at the scene, the highway patrol report, and the photographs all support these facts. There were no witnesses except the occupants of the vehicles. Sohl and Thompson were killed; Blackman, Schropp, Dunham and Arnold sustained personal injuries, those of Schropp being by far the most serious.

Farmers investigated immediately. The facts outlined above were known to it within a few days; they are included within the report of Farmers' investigator, prepared November 28, 1969. Insofar as liability is concerned, no subsequent facts were learned. The only later developments were in the physical condition and health of the injured persons. Schropp was in intensive care for over thirty days. During that time, one of Farmers' adjusters called on Schropp's mother three times, and each time told her that if she would send the medical bills to him, Farmers would take care of them. On December 30, 1969, Robert Howard, who had been retained as counsel for Schropp, wrote to Farmers and accepted its offer to make advance payments of medical bills. He enclosed statements totaling $9,144.65. Almost a month later Farmers replied, stating that it was not then in a position to make advance payments, but it might be shortly, and it would be in touch with Howard in the near future regarding settlement.

The company did not contact Howard regarding settlement. On February 13, 1970, Howard again wrote the company. He enclosed Schropp's medical and hospital bills, which then exceeded $26,000.00, and he made formal demand for payment of the policy limits in settlement of the Schropp claim. (The policy limits were $25,000 for one person, maximum of $50,000 for each accident.) Howard fixed a ten-day time limit for acceptance of the demand.

Russell Cleeton, the claims manager who was handling the matter for Farmers, was given policy limits authority—authorization to pay the entire $50,000 to settle all claims arising out of this collision, or $25,000 to settle any one claim—on February 20, 1970. On the same date Cleeton wrote Howard, saying that it

would take Farmers a few days longer but ". . . we will certainly give you a decision as to your client's claim just as soon as it is feasibly possible to do so under the circumstances."

At that time, Cleeton was aware that the specials (hospital and medical expenses) for the other claimants totaled only four to five thousand dollars. On February 26, 1970, Cleeton shipped the company file to Mr. Turner for handling, and shortly thereafter Cleeton called Howard and told him that it would be necessary for Howard to petition for the appointment of an administrator of the Estate of Clint R. Sohl, and to file a formal claim in that proceeding.

Howard, as attorney for Schropp, then filed a petition for administration of the Estate of Clint R. Sohl in the probate court of Pawnee County, Kansas, on March 12, 1970. On March 26, the matter came on for hearing. The court appointed Morgan Wright as administrator, and issued letters of administration to him. Farmers, having resisted Wright's appointment, authorized its attorneys, who were acting as counsel for Sohl's parents, to appeal Wright's appointment to the district court. The district court heard the matter on May 19, 1970, and affirmed the orders of the probate court and the appointment of Wright as administrator. Petitions for allowance of demands were filed against the estate by Michael D. Schropp, Michael G. Blackman, and Stephen M. Arnold.

Farmers then decided not to litigate the matter in Pawnee County. On July 2, 1970, it filed a petition for declaratory judgment in the district court of Barton County, Kansas, joining Blackman, Schropp, Dunham, Arnold, and the parents and next of kin of Daryl C. Thompson as defendants. Farmers had made no overtures or offers of settlement to any of the parties. The policy limits authority given to its claims manager in February remained unexercised.

Farmers paid $50,000 into court at the time the declaratory judgment action was filed. It alleged that it was in doubt as to whether it should pay any part of the proceeds to the defendants; it asked the court to determine its rights and those of the defendants; and it asked that it be released from all further liability to the defendants. Schropp moved to join the Estate of Sohl as an additional party defendant; Farmers opposed that motion. After hearing, the district court found the estate to be a necessary party

and granted the motion, joining Sohl's estate as a party defendant.

On September 15, 1970, counsel for Blackman, Schropp, Dunham, Arnold, and for the parents of Thompson, stipulated that by reason of the extremely serious injuries sustained by Schropp, the value of his claim against the Estate of Sohl greatly exceeded $25,000, that being represented by Farmers to be the limit of coverage which would apply to the Schropp claim. Counsel further stipulated as to the apportionment of the remaining $25,000 among defendants Blackman, Dunham, Arnold, and the parents of Thompson. This stipulation, by its terms without prejudice to the claims of Schropp against Farmers and the Estate of Sohl, was filed September 15, 1970. It was approved on March 2, 1971, and disbursement of the $25,000 apportioned as stipulated between Blackman, Dunham, Arnold, and the parents of Thompson, was ordered, all without prejudice to the claims of Schropp. The remaining $25,000 was not disbursed at this time.

Schropp, meanwhile, filed a counterclaim against Farmers and a cross-claim against the Estate of Sohl in the declaratory judgment action. He sought judgment against Farmers for $26,817.55, representing his total medical and hospital expense, which he claimed Farmers had contracted to pay; he sought judgment against the Estate of Sohl for $776,817.55 for damages based on negligence, and he sought an additional judgment against Farmers for $750,000 of that amount, contending that Farmers had handled his claim in a negligent manner and without good faith, had failed and refused to settle the claim within its policy limits, and had demonstrated negligence and bad faith in violation of its duties to its insured, and he contended that Farmers had obligated itself to the Estate of Sohl and to Schropp to pay the full amount of his loss.

Farmers replied. It denied that Sohl was negligent, claimed that Blackman's negligence was the sole cause of the collision and resulting damages, and denied the rest of Schropp's claim. Counsel for Farmers also filed an answer to the cross-claim on behalf of Morgan Wright, administrator of Sohl's estate (whose appointment counsel had vigorously opposed), adopting generally the positions taken by Farmers. Next, Wright filed a motion for permission to file a counterclaim against Farmers, by which he proposed to charge Farmers with negligence and bad faith in the handling of the Schropp claim, and to disqualify Farmers'

counsel from serving as counsel for the estate because of obvious conflict.

Farmers promptly filed a motion to stay further proceedings until the court determined the question of whether or not Farmers had a duty to defend the Estate of Sohl. Farmers contended that since it had paid its policy limits into court, it no longer had a duty to defend the insured or his estate. The trial court decided that Farmers had such a duty under its policy, and that the duty to defend was separate from the duty to pay damages. Two months later, in July, 1971, the Turner firm withdrew as counsel for the administrator, and thereafter he retained separate counsel.

At a pretrial conference held on October 19, 1973, Farmers admitted that Sohl was negligent, and that his negligence was a proximate cause of Schropp's injuries. The nature and extent of those injuries remained in dispute.

A stipulation was entered into by counsel for Schropp and for the Estate of Sohl in October, 1973. This provided in part:

"That the nature and extent of injuries and damages sustained by Michael D. Schropp is in the amount of $110,000.00; that the Cross-Claim of Michael D. Schropp against the Estate of Clint R. Sohl, deceased, should be allowed in said amount; that judgment should be entered thereon . . .

"That the entering into of this Stipulation shall be without effect upon or prejudice to any rights, claims or defenses of any of the parties to this action, except as to the issue of the nature and extent of injuries and damages sustained by Michael D. Schropp . . ."

Farmers authorized its counsel to stipulate to a judgment in favor of Schropp and against the Sohl estate in the amount fixed in that stipulation. The stipulation was submitted to the court and approved, and judgment was entered by the court on December 14, 1973, in favor of Schropp and against the Estate of Clint R. Sohl for the sum of $110,000. The remaining $25,000 deposited by Farmers with the district court in 1970, together with accrued interest of $995.03, was then paid to Schropp as a credit against his judgment against the estate, and a partial satisfaction of judgment was filed by Schropp on December 27, 1973.

Schropp's counterclaim against Farmers, as well as that of the Estate of Sohl, were tried to a jury, which returned a special verdict on October 10, 1974, as follows:

"1. Do you find that the Insurance Company acted negligently or in bad faith toward its insured in handling the claim of Schropp?
"ANSWER: Yes.

"2. Do you find the Insurance Company and Claimant Schropp through his mother Glennis Schropp, entered into an oral contract whereby the Insurance Company agreed to pay the medical expenses of Schropp?

"ANSWER: Yes.

"3. If you answered No. 2 'Yes' then what did the company agree to pay?

"[ANSWER:] Medical and hospital expenses incurred by Schropp as a result of the accident."

The trial court approved the verdict, found that Farmers was guilty of negligence and bad faith in the handling of the Schropp claim, that Farmers had contractually obligated itself to pay. Schropp's medical bills, and the court entered judgment in favor of Schropp and against Farmers in the sum of $26,913.20 (on the contractual claim for medical expenses); in favor of Schropp and the Estate of Sohl and against Farmers in the sum of $90,165.33 (that being the balance of the $110,000 damages Schropp sustained, after adjustments for credit and interest); in favor of the Estate of Sohl and against Farmers in the sum of $9,859.56 for administrator's fees, expenses and attorney's fees; and against Farmers for the costs of the action. The trial court denied Farmers' motion for judgment notwithstanding the verdict and for new trial; this appeal followed.

Farmers first contends that the trial court erred in failing to sustain its motion for judgment notwithstanding the verdict, since no evidence of negligence or bad faith on the part of the insurance carrier was presented that would support the jury's answers to special questions. In this connection, Farmers contends that it did not exhibit negligence or bad faith toward its insured by failing to accept Schropp's demand for policy limits; by initiating a declaratory judgment action; by contesting the appointment of Morgan Wright as administrator of Sohl; or by failing to defend the Estate of Clint R. Sohl.

This court has previously considered the duties of an insurance carrier in defending and settling claims against its insured. In *Bollinger v. Nuss*, 202 Kan. 326, 449 P.2d 502, we said:

". . . [A] liability insurer, having assumed control of the right of settlement of claims against the insured, may become liable in excess of its undertaking under the policy provisions if it fails to exercise good faith in considering offers to compromise the claim for an amount within the policy limits. . . . Public policy dictates that the insured's interests be adequately protected, and we believe this may be best accomplished by holding that both due care and good faith are required of the insurer in reaching the decision not to settle. . . . (p. 333.)

". . . [U]nder the negligence test the insurer must conduct itself with that degree of care which would be used by an ordinarily prudent person in the management of his own business, with no policy limits applicable to the claim. Likewise, under the good faith test, the insurer must in good faith view the situation as it would if there were no applicable policy limits. . . ." (pp. 337-338.)

.    .    .    .    .    .    .    .    .    .

"Whether an insurer in defending a claim and refusing an offer of settlement within policy limits was negligent or acted in bad faith is a question for the trier of fact in each case. . . . The company cannot be required to predict with exactitude the results of a trial; nor does the company act in bad faith where it honestly believes, and has cause to believe, that any probable liability will be less than policy limits. . . . Good faith on the part of the insurer implies honesty, fair dealing and adequate information. . . ." (p. 341.)

For a more extensive discussion, see *Bollinger v. Nuss,* supra; *Rector v. Husted,* 214 Kan. 230, 237 *et seq.,* 519 P.2d 634; and *Rider v. State Farm Mutual Automobile Ins. Co.,* 514 F.2d 780 (10th Cir. 1975).

In *Castoreno v. Western Indemnity Co., Inc.,* 213 Kan. 103, 515 P.2d 789, the liability insurance carrier settled with two of several claimants, exhausting all except $500 of its policy limits. The action was commenced by two sets of claimants, who had not been paid, and who alleged improper handling of the multiple claims by the insurer and the administrator of the estate of the deceased insured. Holding that the settlements were made in good faith and did not subject the insurer to excess liability, we said:

"Our holding is that a liability insurer may in good faith settle part of multiple claims arising from the negligence of its insured even though such settlements deplete or exhaust the policy limits of liability so that the remaining claimants have little or no recourse against the insurer." (pp. 111-112.)

*Castoreno* is cited with approval in *Hartford Cas. Ins. Co. v. Dodd,* 416 F. Supp. 1216, 1219 (D. C. Md. 1976). That court states the rule as follows:

"A liability insurer may settle claims in good faith with some claimants, even if such settlements reduce the amount available to others. There is ordinarily no requirement that the insurer wait until all claims have been presented before it deals with any claimant."

*Coleman v. Holecek,* 542 F.2d 532 (10th Cir. 1976), involves the duty of an insurance carrier to initiate settlement negotiations. After a discussion of *Bolinger* and *Rector,* supra, the court says:

". . . The duty to consider the interests of the insured arises not because there has been a settlement offer from the plaintiff but because there has been a claim for damages in excess of the policy limits. This claim creates a conflict of interest between the insured and the carrier which requires the carrier to give equal consideration to the interests of the insured. *Bollinger v. Nuss, supra.* This means that 'the claim should be evaluated by the insurer without looking to the policy limits and as though it alone would be responsible for the payment of any judgment rendered on the claim.' *Rector v. Husted, supra* at 641. When the carrier's duty is measured against this standard, it becomes apparent that the duty to settle does not hinge on the existence of a settlement offer from the plaintiff. Rather, the duty to settle arises if the carrier would initiate settlement negotiations on its own behalf were its potential liability equal to that of its insured.

". . . It was Allstate's untimely withdrawal from the case . . . which ultimately led to a judgment greatly in excess of the policy limits. This result might easily have been avoided had Allstate continued the settlement negotiations under a reservation of rights or had it sought a judicial determination of its liability on the policy prior to resigning the defense. . . ." (p. 537.)

We turn now to the evidence in the case at hand, mindful that it is not the function of this court to weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact; we are concerned only with evidence which supports the judgment, and not with evidence which might have supported contrary findings. *Steele v. Harrison,* 220 Kan. 422, 552 P.2d 957; *Parsons Mobile Products, Inc. v. Remmert,* 216 Kan. 256, 531 P.2d 428. Answers given by a jury to special questions will not be disturbed on appeal, when they are supported by substantial competent evidence. *Kleppe v. Prawl,* 181 Kan. 590, 597, 313 P.2d 227, 63 A.L.R.2d 175.

The evidence is not disputed that Farmers investigated the accident promptly, and that it determined its liability. It offered to pay Schropp's medical payments. It authorized its claim agent to expend the policy limits in settlement of the claims. And it filed this declaratory judgment action some eight months after the collision, and paid its policy limits into court.

Farmers made no medical payments to Schropp or the other claimants. Its claims manager wrote to Howard, saying, "I will be in touch with you in the near future regarding a settlement"; however, no such contact was made, and no offers of settlement were ever made by Farmers to Schropp or any of the other claimants. Farmers made no effort to get the claimants together and work out the settlement.

The letter from Schropp's attorney, demanding payment of the policy limits, was in effect an offer to settle Schropp's claims

within the policy limits and was so construed by Farmers. At the time this offer was refused, Farmers knew that Schropp's claim would be substantial, and that his medical expenses alone exceeded its policy limits. It also knew that the medical expenses of all of the other claimants were from four to five thousand dollars, and it knew that its insured's negligence caused the collision and the resulting injuries and damages. It required Schropp to petition for letters of administration of the Estate of Sohl, then actively opposed the appointment of anyone other than Sohl's father as administrator, and appealed an adverse decision to the district court. After the district court affirmed, Farmers filed its petition for declaratory judgment in the district court of another county. By that petition it denied liability, and, though its investigation indicated that its insured was at fault and there was no evidence of contributory negligence, it continued to deny liability and to assert contributory negligence for more than four years after the collision.

All but one of the claimants were represented by counsel, and that claimant sustained the least serious injuries of all, and had returned to military duty. He was a minor, and his parents were available for consultation. Under these circumstances, Farmers could well have notified all of the potential claimants involved that the value of the claims would doubtless exceed policy limits, and invite them or their attorneys to participate jointly in efforts to reach agreement as to the disposition of the available funds. Alternatively, Farmers could have attempted to settle claims within the policy limits as they were presented. Or as a third alternative, Farmers could have promptly and in good faith commenced an interpleader action, and paid its policy limits into court. (See *Club Exchange Corporation v. Searing,* 222 Kan. 659, 567 P.2d 1353.) The first of these alternatives is preferable, where the claimants are readily available, and such a procedure may avoid litigation. Farmers pursued none of these alternatives.

We conclude that there was substantial competent evidence to support the jury's finding that Farmers acted negligently or in bad faith toward its insured in the handling of the claims arising out of the collision. We should note that, in addition to the evidence outlined above, expert testimony was offered on behalf of Schropp and received by the court; this, too, was supportive of the finding.

Appellant next contends that the trial court erred in failing to give it a remittitur of $26,913.20 plus interest, that being the amount of Schropp's medical expenses which he contended Farmers contracted and agreed to pay. Appellant contends that it merely offered an advance payment within the meaning of K.S.A. 40-275 which provides in pertinent part that:

"No advance payment or partial payment of damages, predicated on possible tort liability, as an accommodation to an injured person . . . shall be admissible into evidence as an admission against interest or admission of liability by such party or self insurer . . ."

Farmers contends that there was no meeting of the minds, and that Farmers received no consideration for the alleged contract. Schropp, on the other hand, contends that the contract for payment of medical bills is valid and enforceable.

We have carefully reviewed the evidence in this regard, and conclude that no enforceable contract resulted. There was no promise or evidence of forbearance on the part of Schropp, and Farmers received no consideration or benefit. And there is an additional reason why the separate judgment for medical expenses cannot stand. It was stipulated that the nature and extent of the injuries and damages sustained by Schropp is in the amount of $110,000. The judgment of $90,165.33 represents the balance of the stipulated sum for injuries and damages. The reasonable expenses of necessary medical care, hospitalization and treatment are elements of personal injury damage, and are part of the damages sustained. The total damages here were stipulated, and the jury was instructed that the extent of Schropp's damages was not an issue in the trial since damages had already been determined. Whether the insurer is bound to pay medical expenses by contract, or whether those expenses are part of the damages for which it is liable because of the negligence of its insured and its negligent or bad faith handling of the resulting claim, is not material. It is obligated to pay those expenses but once. We conclude that this portion of the district court's judgment must be set aside.

Farmers next contends that the trial court erred in entering judgment against it because of bad faith or negligence in not settling within the policy limits, for the reason that the Estate of Sohl was insolvent and was not damaged by the carrier's failure

to settle. Farmers relies upon two cases from the second circuit, *Harris v. Standard Accident and Insurance Company*, 297 F.2d 627 (2d Cir. 1961), cert. den. 369 U.S. 843, 7 L. Ed.2d 847, 82 S. Ct. 875, and *Bourget v. Government Employees Insurance Company*, 456 F.2d 282 (2d Cir. 1972).

We recognize that there are two separate rules in this regard. One, known as the prepayment rule, holds that payment of an excess judgment, or a portion thereof, is a condition precedent, and that no cause of action arises in favor of an insured and against the insurer for wrongful failure to settle a claim within the policy limits until the insured has made some payment upon the judgment secured against him. Courts which have adopted the other rule, known as the "judgment rule," hold that payment of the excess judgment, or a portion thereof, is not a condition of recovery; and that such an action may be maintained by the insured, even though the insured has made no payment upon the judgment. An extensive annotation of these cases may be found in 63 A.L.R.3d 627.

Farmers thus contends that it is not obligated to exercise good faith in order to settle damage claims within the policy limits when its insured is bankrupt, insolvent, or otherwise judgment proof; and that an insolvent estate, such as that of Sohl, like an insolvent insured, cannot be harmed by the entry of an excess judgment against it, since it has no assets with which to pay the judgment.

The Supreme Court of Texas in *Hernandez v. Great American Ins. Co. of N.Y.*, 464 S.W.2d 91 (Tex. 1971), abandoned the prepayment rule and adopted the judgment rule for that state. The court observed that the traditional rule of strict indemnity requires the indemnitor to reimburse only actual loss and not to discharge the liability of the indemnitee; however, the court concluded that the prepayment rule was inconsistent with the law of tort liability, where the injured party is entitled to recover, as near as possible, compensation for the damages he suffers. The court observed that virtually everything that has been written on this subject in the past fifteen years has favored the judgment rule over the prepayment rule.

We find the following in 7 Am. Jur. 2d Automobile Insurance § 158, pp. 490-491:

". . . [I]t is now generally held, although there is some authority to the

contrary, that an action against the insurance company will lie regardless of whether or not the insured has paid or can pay the portion of the judgment in excess of the policy limits."

We do not think that the prepayment rule serves the ends of justice, and decline to adopt it. On the contrary, we see no reason why the insolvency of an insured or his estate should excuse the insurer from exercising the same good faith it would be expected to exercise, were the insured fully financially responsible. Further, an insured need not wait until his property is seized under an excess judgment before commencing action against an insurer whom the insured claims has acted negligently or in bad faith in failing to settle a claim within the policy limits. The action lies, whether or not the insured has paid or can pay an excess judgment.

Appellant next claims that the trial court erred in receiving evidence with respect to appellant's offer to make advance payments, contrary to K.S.A. 40-275. That statute, as noted above, prohibits the use of evidence of advance or partial payments as evidence of an admission against interest or as an admission of liability.

Evidence of Farmers' offer of advance payments was not received in this action as an admission of liability or as an admission against interest. Liability was already admitted, and was not an issue before the jury. The fact of the tender of payments, and the later refusal to make them, was competent evidence to show a course of dealing by the insurer. We find no error.

Appellant contends that the trial court erred in receiving evidence of the manner in which the $50,000 policy proceeds were disbursed. In essence, the evidence indicated that shortly after the declaratory action was filed, counsel for all of the claimants met and resolved the disposition of the policy proceeds, $25,000 being allocated to and divided between the other claimants, and $25,000 being reserved for Schropp. The issue being tried was that of the negligence and bad faith of the insurer in failing to settle within the policy limits. It had made no attempt to do so. This evidence indicated that a division of policy proceeds was swiftly, if not readily, accomplished, when it was first attempted.

Under K.S.A. 60-401 (b) and 407 (f), all relevant evidence is admissible. Relevancy is a matter of logic and experience. *State v. Faulkner,* 220 Kan. 153, 155, 551 P.2d 1247.

Upon the record before us, we conclude that evidence of how and when the proceeds were divided was relevant to show the relative ease with which the settlement was accomplished, and was thus relevant to show whether Farmers' rejection of Schropp's offer to settle within the policy limits, and its utter failure to attempt any settlement whatsoever, was negligent or in bad faith.

Farmers claims that the trial court erred in requiring it to produce for inspection correspondence between Farmers and its counsel, Turner, after July 9, 1971, the date upon which the Turner firm withdrew as counsel for the Estate of Sohl.

In support of this contention, appellant cites and quotes at length from two statutes, K.S.A. 60-226 (b) (Corrick) and K.S.A. 60-234 (Corrick). Both statutes were amended by order of this court, effective on January 1, 1973. The order of the district court, of which complaint is made, was entered during July, 1974, long after the effective date of the amendments. The applicable statute, K.S.A. 60-226 (b) (3) (Weeks) provides in substance that documents prepared in anticipation of litigation or for trial by a party's attorney may be discovered ". . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impression, conclusions, opinions, or legal theories of an attorney . . ."

The trial court implicitly determined that Schropp needed the documents and that there was no reasonable alternative source for the same information. Counsel for Farmers then delivered to counsel for Schropp the documents in the company file not claimed to be privileged, and delivered those upon which a claim of privilege was raised to the trial judge for his inspection *in camera*. The record does not disclose whether any of those documents, which Farmers contended were privileged, were ultimately disclosed to Schropp's counsel. In effect, Farmers makes a bald assertion of prejudice, but makes no showing of it in the record. Appellant has failed to provide this court with an adequate record in order for the court to review this point. The burden is upon the appellant to designate a record sufficient to

present its points to this court, and to establish the claimed error. *State v. Jones,* 222 Kan. 56, 563 P.2d 1021.

Farmers contends that the court erred in failing to permit it to take a discovery deposition of Robert Howard, and in failing to disqualify him as counsel for Michael Schropp, for the reason that Howard "was a witness in the matter"; and that the court likewise erred in permitting Larry Keenan, co-counsel for Schropp, to withdraw as counsel and to testify as a rebuttal witness. Schropp, in answer to an interrogatory asking that he list each person who had any knowledge of his alleged contract claim, listed, among others, Robert Howard. Farmers promptly sought to take Howard's deposition. Schropp filed a motion to quash the notice to take Howard's deposition. The district court stayed discovery "until determination is made by the Court as to how to proceed." Later, an additional notice to take Howard's deposition was served; that notice was quashed by the trial court, since Howard was actively engaged in the trial of a lawsuit on the date set for the taking of his deposition. The court ordered, however, that the deposition of any trial counsel might be taken if that attorney was listed in the pretrial order as a witness. Howard was so listed by Farmers. The record does not indicate that Farmers made any further effort to take Howard's deposition, and he was not called as a witness at the trial. We conclude that the trial court did not err in quashing the taking of the deposition, and we find no error in the record in that regard. Further, even though Howard had some contact and attempted settlement with claims people for Farmers in the early stages, he was certainly not disqualified to continue as trial counsel for Schropp because of those contacts.

Keenan was employed as counsel for one of the claimants, Dunham, shortly after the collision. He discussed the case with Carroll Knoll, an insurance adjuster for Farmers. After the stipulation was entered into, resolving Dunham's claim, and after the judgment entered in Dunham's behalf was paid, Keenan was engaged as co-counsel for Schropp, and acted as such during the trial. Knoll testified on trial that Keenan had made a policy limits demand from him on behalf of Dunham. The record indicates that this alleged policy limits demand was not reflected in any of Knoll's reports to his employer, or in any of Farmers' records. Schropp contends that he was surprised by the testimony of

Knoll, and that it was thus necessary to call Keenan as a rebuttal witness to refute Knoll's testimony. Keenan withdrew as counsel for Schropp, and thereafter was permitted to give rebuttal testimony.

The need for Keenan's testimony was not anticipated. He was not called during the presentation of Schropp's case in chief. It was only after Knoll's unexpected statement that the need for Keenan's testimony became apparent. Keenan then withdrew as trial counsel and was called to testify in rebuttal. This was in accordance with DR 5-102 (A) of the Code of Professional Responsibility, 214 Kan. lxxxv, and with the great weight of authority. See *Food Fair Stores v. Howard,* 58 Del. 558, 212 A.2d 405; *Gowdy v. Richter,* 20 Ill. App.3d 514, 314 N.E.2d 549; *Cannella v. Cannella,* 132 Ill. App.2d 889, 270 N.E.2d 114, 117; and *Manion v. Chicago, Rock Island & Pacific Ry. Co.,* 12 Ill. App.2d 1, 138 N.E.2d 98.

Farmers contends that it was error for the trial court to allow administrator's fees and attorney's fees in the amount of $9,859.56. In its statement of points on appeal, appellant contends that this was error because a substantial amount of the work done by the administrator, who was also an attorney, was duplicative with that of counsel for the Estate of Sohl. There is nothing in the record to support this contention.

In its brief, Farmers also contends that it never *refused* to pay the Schropp claim, and therefore it was improper for the trial court to award fees pursuant to K.S.A. 40-256. To say that Farmers did not *refuse* to pay the Schropp claim, simply because that word was not used in Farmers' reply to Howard's demand, is incredulous. The facts belie Farmers' argument. Request was made of Farmers to settle the Schropp claim within the policy limits on February 13, 1970; the request was denied on the ground that the investigation was not complete—when for all practical purposes the investigation *was* complete—and Farmers promised to respond as soon as it could, and never did so. This certainly constituted a refusal of the offer to settle, and a refusal to pay.

Sohl's estate was required to defend in the declaratory judgment action as to these issues: (1) whether Farmers was required to pay any of the claims; (2) whether Farmers owed the estate a defense; and (3) the issues raised by the cross-claim of Schropp.

Farmers had a contractual duty to provide a defense to its insured or his estate under the terms of the policy, aside from any right the insured's estate might have to an allowance pursuant to K.S.A. 40-256. Under the facts before us, the assessment of fees and expenses against the insurer was proper. *Upland Mutual Insurance, Inc. v. Noel*, 214 Kan. 145, 519 P.2d 737.

We have examined each of the remaining contentions of appellant, and find no error.

That portion of the trial court's judgment which granted Michael Schropp a judgment against Farmers Insurance Exchange in the sum of $26,913.20, based on claim of contract, is reversed; otherwise the judgment of the trial court is in all respects affirmed.